1  COOLEY LLP
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2  101 California Street, 5th Floor
   San Francisco, CA  94111-5800
3  Telephone:   (415) 693-2000
   Facsimile:   (415) 693-2222
4
   COOLEY LLP
5  MICHELLE C. DOOLIN (179445) (mdoolin@cooley.com)
   DARCIE A. TILLY (239715) (dtilly@cooley.com)
6  4401 Eastgate Mall
   San Diego, CA  92121
7  Telephone:   (858) 550-6000
   Facsimile:   (858) 550-6420
8
9  Attorneys for Defendant LEGALZOOM.COM, INC.

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13

14  LEGALFORCE, INC., a Delaware        Case No. 4:18-cv-07274-EJD
    corporation,
15                                      **DEFENDANT LEGALZOOM.COM,
                   Plaintiff,           INC.'S NOTICE OF MOTION AND
16                                      MOTION TO DISMISS THE
          v.                            COMPLAINT; MEMORANDUM OF
17                                      POINTS AND AUTHORITIES**
    LEGALZOOM.COM, INC., a Delaware
18  corporation,                        Date:       February 28, 2019
                                        Time:       9:00 a.m.
19                 Defendant.           Judge:      Hon. Edward J. Davila
                                        Location:   Courtroom 4
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................. 1

STATEMENT OF RELIEF SOUGHT ........................................................................ 1

STATEMENT OF ISSUES .......................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

I.      INTRODUCTION. ............................................................................................ 2

II.     BACKGROUND. .............................................................................................. 3

 A.      The Parties. .............................................................................................. 3

 B.      Northern District Litigation. ................................................................... 4

 C.      This Litigation. ........................................................................................ 5

 D.      Other Cases Recently Filed by LegalForce, Inc. .................................. 5

 E.      Allegations in Complaint in this Action. ............................................... 6

  1.      The Alleged Trademarks at Issue. ............................................... 6

  2.      LegalZoom's Purported Registration of and Redirection From the Disputed Domain. ..................................................................... 6

  3.      Plaintiff's Alleged Injury From the Disputed Domain. .............. 7

III.    LEGAL STANDARDS ON A MOTION TO DISMISS. ................................. 7

 A.      Federal Rule of Civil Procedure 12(b)(6). ............................................ 7

 B.      Federal Rule of Civil Procedure 12(b)(1). ............................................ 8

IV.     PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE ANY OF ITS CLAIMS. ........................................................................................................... 9

 A.      Plaintiff's Allegations of Reputational Injury Are Speculative. ........... 9

 B.      Plaintiff's Allegations Do Not Indicate That LegalZoom Is a Substantial Factor in Causing Plaintiff's Purported Economic Injury. ..................... 10

V.      THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT (COUNTS I, II, AND IV). .............................................. 12

 A.      Plaintiff's Claims for Trademark Infringement (Counts I, II, and IV) Fail Because Plaintiff Did Not Sufficiently Plead a Likelihood of Confusion. ................ 13

  1.      Plaintiff Does Not Plausibly Allege Likelihood of Confusion at the Point of Making a Purchasing Decision. .................................... 14

   a.      LegalZoom Cannot Be Held Liable for Trademark Infringement From 2012-2014 Because Registration of a Domain Name, Without More, Is Not Infringement. ........... 14

   b.      LegalZoom's Purported Redirection From the Disputed Domain to LegalZoom.com Is Not Likely to Cause Confusion. ....... 15

  2.      The Allegations Regarding "Initial Interest Confusion" Are Not Plausible. ..................................................................................... 17

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF CONTENTS
(continued)

**Page**

        a.    Plaintiff Alleges No Facts to Suggest that a Consumer Searching for Trademarkia Would Have Found the Disputed Domain. .................................................................................... 17

        b.    The Domain Name Does Not Fall Within the Narrow Set of Domains That Suggest Active Affiliation with the Plaintiff. ............ 19

        c.    The Complaint Seeks Unprecedented Expansion of the "Initial Interest Confusion" Doctrine. ........................................................... 19

    B.    Plaintiff Failed to Satisfy Rule 9(b) With Respect to Its Claim for Trademark Infringement Under 15 U.S.C. § 1125(a) (Count II)................................. 20

    C.    Plaintiff Lacks Statutory Standing to Pursue Its Claims for Trademark Infringement Under the Lanham Act Under 15 U.S.C. § 1125(a) (Count II). .......... 20

VI.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. .............................. 22

VII.    CONCLUSION ................................................................................................................ 22

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS COMPLAINT; MEMO OF P. & A.**
**4:18-CV-07274-EJD**

**TABLE OF CONTENTS**

**Page**

**Cases**

*578539 B.C., Ltd. v. Kortz,*
    2014 WL 12572679 (C.D. Cal. Oct. 16, 2014)..........................................21

*Ahmed v. Hosting.com,*
    28 F. Supp. 3d 82 (D. Mass. 2014)........................................................21

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)................................................................15

*Anderson v. City of Alpharetta,*
    770 F.2d 1575 (11th Cir. 1985)...........................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................8

*Bassett v. ABM Parking Servs., Inc.,*
    883 F.3d 776 (9th Cir. 2018)...............................................................10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................8, 16, 22

*Bosley Med. Inst., Inc. v. Kremer,*
    403 F.3d 672 (9th Cir. 2005)...............................................................13

*Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.,*
    2018 WL 3122172 (D. Kan. June 26, 2018)..........................................9

*C5 Med. Werks, LLC v. Ceramtec GmbH,*
    2016 WL 4092955 (D. Colo. June 10, 2016)........................................9

*Cal. Ass'n of Physically Handicapped, Inc. v. F.C.C.,*
    778 F.2d 823 (D.C. Cir. 1985).............................................................11

*Colony Cove Props., LLC v. City of Carson,*
    640 F.3d 948 (9th Cir. 2011)................................................................8

*Cone Corp. v. Fla. Dep't of Transp.,*
    921 F.2d 1190 (11th Cir. 1991)...........................................................10

*DeMarco v. DepoTech Corp.,*
    149 F. Supp. 2d 1212 (S.D. Cal. 2001)...............................................12

*Entrepreneur Media, Inc. v. Smith,*
    279 F.3d 1135 (9th Cir. 2002).............................................................13

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

i.

**DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD**

**TABLE OF AUTHORITIES**
(continued)

Page

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................. 22

*GoPets Ltd. v. Hise*,
657 F.3d 1024 (9th Cir. 2011).............................................................14, 18

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
304 F.3d 936 (9th Cir. 2002)..............................................................17, 18

*Karl Storz Imaging, Inc. v. Pointe Conception Med., Inc.*,
2011 WL 13195980 (C.D. Cal. Aug. 1, 2011).......................................... 19

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
734 F. App'x 401 (9th Cir. 2018) ............................................................. 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 188 (2014) ...................................................................3, 20, 21

*Lockheed Martin Corp. v. Network Sols., Inc.*,
985 F. Supp. 949 (C.D. Cal. 1997)........................................................... 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................... 8

*Lundgren v. AmeriStar Credit Sols., Inc.*,
40 F. Supp. 3d 543 (W.D. Pa. 2014) ........................................................ 21

*McGee v. Diamond Foods, Inc.*,
2016 WL 816003 (S.D. Cal. Mar. 1, 2016) .............................................. 10

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015)................................................................3, 15, 16

*Nature's Earth Prods., Inc. v. Planetwise Prods., Inc.*,
2010 WL 4384218 (S.D. Fla. Oct. 28, 2010)............................................. 9

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011)....................................................... 13, 15, 18, 20

*Nkwuo v. Santa Clara Cty. Human Res.*,
2017 WL 3605229 (N.D. Cal. Aug. 21, 2017)......................................... 22

*Nordstrom, Inc. v. 7525419 Canada Inc.*,
2012 WL 12507605 (W.D. Wash. Dec. 27, 2012)................................... 13

**TABLE OF AUTHORITIES**
(continued)

Page

*NorthBay Healthcare Grp. v. Kaiser Found. Health Plan, Inc.*,
  2018 WL 4096399 (N.D. Cal. Aug. 28, 2018)..............................................................9

*Papasan v. Allain*,
  478 U.S. 265 (1986) ....................................................................................................8

*Schmeir v. U.S. Ct. of Appeals for the Ninth Cir.*,
  279 F.3d 817 (9th Cir. 2001)) ..................................................................................10

*Smith v. Bank of Am., N.A.*,
  679 F. App'x 549 (9th Cir. 2017)...............................................................................8

*Smoothreads, Inc. v. Addventure Prod., Inc.*,
  2009 WL 10671911 (S.D. Cal. Sept. 29, 2009) ........................................................20

*Solis v. City of Fresno*,
  2012 WL 868681 (E.D. Cal. Mar. 13, 2012) .............................................................12

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016).........................................................................................2, 8, 9

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .......................................................................................8

*Stevens v. Harper*,
  213 F.R.D. 358 (E.D. Cal. 2002)..................................................................................8

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
  919 F. Supp. 2d 1112 (D. Nev. 2013).........................................................................19

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010).......................................................................10, 13, 19

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.*,
  2010 WL 1329077 (S.D. Cal. Apr. 1, 2010).........................................................11, 12

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) .....................................................................................................8

**Statutes**

15 U.S.C.§ 1124(a)...................................................................................................20, 21

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

**Other Authorities**

Federal Rules of Civil Procedure
  12(b)(1) ................................................................................................................. 8
  12(b)(6) ................................................................................................................. 7

Glynn S. Lunney, Jr., Trademarks and the Internet: The United States' Experience,
  97 Trademark Rep. 931 (2007) ........................................................................... 17

Malla Pollack, CORPORATE COUNSEL'S GUIDE TO TRADEMARK LAW,
  § 7:3 Trademark Watch Services (August 2018 Update) ...................................... 4

Mary M. Squyres and Nanette Norton, 3 Trademark Prac. Throughout the World,
  § 26:2 Trademark monitoring (April 2018 Update) .............................................. 4

Michael Grynberg, Trademark Litigation As Consumer Conflict,
  83 N.Y.U. L. Rev. 60 (2008) .............................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iv.

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3       PLEASE TAKE NOTICE that on February 28, 2019, at 9:00 a.m., or as soon after as this

4   matter may be heard, in Courtroom 4 of the United States District Court for the Northern District of

5   California, located at 280 South 1st Street, San Jose, CA, 95113, LegalZoom.com, Inc. ("LegalZoom")

6   will, and hereby does move under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure

7   ("Rules"), to dismiss Plaintiff's Complaint ("Complaint") filed on July 16, 2018, in the United States

8   District Court for the Central District of California, and transferred to the United States District Court

9   for the Northern District of California on November 30, 2018, by order of Judge Otis D. Wright II.

10  This motion is based on this Notice of Motion, the accompanying Memorandum of Points and

11  Authorities, the accompanying Request for Judicial Notice, the pleadings and papers on file in this

12  matter, and such other matters as may be presented to the Court at the hearing.

13

## STATEMENT OF RELIEF SOUGHT

14       LegalZoom seeks dismissal with prejudice of the entire Complaint under Rule 12(b)(1) for

15  lack of standing and dismissal of Counts I, II, and IV under Rule 12(b)(6) for failure to state a claim

16  upon which relief may be granted.

17

## STATEMENT OF ISSUES

18       1.      Whether Plaintiff LegalForce, Inc. ("Plaintiff," "LegalForce," or "Trademarkia") has

19  Article III standing to bring its claims.

20       2.      Whether Plaintiff adequately alleged that LegalZoom infringed Plaintiff's trademark in

21  violation of 15 U.S.C. § 1114 [Count I]; 15 U.S.C. §1125(a) [Count II]; or California common law

22  [Count IV].

23       3.      Whether the Complaint should be dismissed with prejudice.

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION.

Although this case number was only recently opened in the Northern District, this litigation has a long and tortured history.  Plaintiff, a self-professed, aspiring competitor of LegalZoom, initiated its claims against LegalZoom in this Court in late 2017.  The 2017 action was assigned to the Honorable Maxine M. Chesney and took a "kitchen-sink" approach to pleading statutory and common-law violations.  After suffering multiple adverse rulings at the pleading stage, and while LegalZoom's motion to dismiss the Second Amended Complaint was pending, Plaintiff filed a voluntary dismissal of the 2017 action.  Plaintiff then immediately filed this action in the Central District of California in a blatant attempt to circumvent the prior adverse rulings entered by Judge Chesney.  Finding Plaintiff "abused the judicial process by judge-shopping" (ECF 27), the Central District transferred the action back to this District.  But all that Plaintiff's procedural game-playing did was delay the inevitable dismissal of Plaintiff's claims and waste judicial and party resources.   Like all of the past complaints filed in Plaintiff's 2017 action against LegalZoom, the operative Complaint contains multiple substantive defects and should be dismissed—*this time with prejudice*.

First, Plaintiff lacks Article III standing to pursue its claims.  Although Plaintiff **concludes** that it has suffered reputational and economic injuries due to LegalZoom's alleged registration and use of an Internet domain name that contained both LegalZoom's and Plaintiff's trademarks (www.LegalZoomTrademarkia.com, the "Disputed Domain"), this conclusion is unsupported.  Nowhere in the Complaint is any fact indicating that prospective consumers were ever aware, or could ever be aware, of the Disputed Domain's existence.  For instance, missing from the Complaint are factual details about whether prospective consumers could search the Internet for LegalZoom or Plaintiff and actually find the Disputed Domain, whether LegalZoom promoted the Disputed Domain to prospective consumers, or whether any prospective consumers knew of the Disputed Domain and used it to make a purchase on LegalZoom.com.  As such, Plaintiff failed to plead injuries that are "concrete and particularized" and "fairly traceable" to LegalZoom's alleged conduct.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545, 1547 (2016) (citations omitted).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD**

Second, Plaintiff does not plead facts supporting any of its three claims for trademark infringement. Trademark infringement requires a "likelihood of confusion" among prospective consumers as to the source or sponsorship of the products or services bearing such marks. *See Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936–37 (9th Cir. 2015). But, Plaintiff's allegations that LegalZoom's purported registration and use of the Disputed Domain are likely to create confusion as to the source or sponsorship of LegalZoom's services are conclusory, at best. As noted, nowhere in the Complaint is there any allegation indicating a consumer was or could become aware of the Disputed Domain. Moreover, the allegations in the Complaint make clear that any potential confusion a consumer might have as to the source or sponsorship of LegalZoom's services as a result of visiting the Disputed Domain would be dispelled upon landing on LegalZoom's unambiguous homepage that clearly used only LegalZoom-related marks.

Third, Plaintiff lacks statutory standing to pursue its claim for trademark infringement under 15 U.S.C. § 1125(a). For many of the same reasons that Plaintiff fails to plead a likelihood of confusion and Article III standing, Plaintiff also fails to adequately allege that LegalZoom's "use" of the Disputed Domain proximately caused consumers to "withhold trade from [P]laintiff"—an allegation that is needed to adequately plead standing under the Supreme Court's opinion in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 188, 133 (2014). Without allegations that consumers could locate the Disputed Domain via an Internet search engine, that LegalZoom promoted the Disputed Domain to any consumers, or that any consumers actually knew of the Disputed Domain and used it to make a purchase on LegalZoom.com, there are no facts sufficient to make it plausible, not just possible, that consumers withheld trade from Plaintiff because of the Disputed Domain.

In light of these multiple deficiencies, and additional ones discussed below, this Complaint should be dismissed with prejudice.

## II. BACKGROUND.

### A. The Parties.

Defendant LegalZoom is a platform of people and technology that provides, *inter alia*, access to legal self-help solutions in topic areas such as "Business Formation," "Wills and Trusts," and

"Intellectual Property," and pre-paid legal services plans to millions of people worldwide.  Plaintiff is a Delaware corporation that offers trademark search solutions, trademark monitoring services, general legal information, and domain name registration services.  (¶ 2.)[1]

Plaintiff contends that the parties compete for customers seeking "trademark watch and monitoring services."  (¶ 3.)  Plaintiff, however, provides **no support** for this conclusory allegation, as the Complaint does not describe which "trademark watch and monitoring services" Plaintiff offers as compared to LegalZoom.[2]

## B.   Northern District Litigation.

This litigation is a continuation of a saga that began in December 2017 in the Northern District of California.  The relevant procedural history of the parties' prior litigation and its relationship to this action are summarized in Judge Chesney's April 30, 2018, Order Denying Plaintiffs' Motion For Leave To File Second Amended Complaint; Continuing Case Management Conference ("Order Denying Leave to File SAC"), (Case No. 3:17-cv-07194-MMC, ECF 111), and her June 20, 2018, Order Denying As Premature Plaintiff's Motion For Leave To File Third Amended Complaint; Affording Plaintiff Leave To File Opposition To Defendant's Motion To Dismiss ("Order Denying Leave to File TAC"), (*id.*, ECF 134). As reflected in the Orders Denying Leave to File SAC and Denying Leave to File TAC, the present Complaint is Plaintiff's *sixth* attempt at stating a claim against LegalZoom.

Plaintiff's Second Amended Complaint ("SAC") asserted two claims related to the Disputed Domain.  (*Id.*, ECF 119.)  Plaintiff's proposed Third Amended Complaint ("TAC") referenced substantially the same alleged facts regarding the Disputed Domain as the SAC, but asserted different causes of action.  (*Id.*, ECF 120-1.)  The proposed TAC's causes of action are each repeated in the instant Complaint before this Court.  Plaintiff, however, voluntarily dismissed the previous Northern District action after the parties had (i) fully briefed LegalZoom's Motion to Dismiss the SAC, and

---

[1] All citations to (¶__) are citations to the Complaint.

[2] *See* Malla Pollack, CORPORATE COUNSEL'S GUIDE TO TRADEMARK LAW, § 7:3 Trademark watch services (August 2018 update) (noting that the services offered under the umbrella term "trademark watch and monitoring services" vary widely among the different service providers); *accord* Mary M. Squyres and Nanette Norton, 3 Trademark Prac. Throughout the World, § 26:2.Trademark monitoring (April 2018 Update).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

1  (ii) after Judge Chesney issued the Order Denying Leave to File TAC on the ground that the motion

2  had been prematurely filed before she could rule on LegalZoom's Motion to Dismiss the SAC.  (*Id.*,

3  ECF 142.)

4  **C.   This Litigation.**

5       One week after its voluntary dismissal of the Northern District action, Plaintiff filed the instant

6  Complaint in the United States District Court for the Central District of California.  (ECF 1.)  In

7  response, LegalZoom moved to transfer the case back to the Northern District.  (ECF 20.)  In light of

8  the motion to transfer, the court extended LegalZoom's deadline to respond to the Complaint until 14

9  days after a ruling was issued on the motion to transfer.  (ECF 22.)  On November 27, 2018, the court

10 granted LegalZoom's Motion to Transfer stating that, "[a]lthough the Court is inclined to levy

11 monetary sanctions against LegalForce for its blatant forum-shopping, the Court will instead exercise

12 its inherent authority to transfer this case back to the United States District Court for the Northern

13 District of California."  (ECF 27 at 9.)

14 **D.   Other Cases Recently Filed by LegalForce, Inc.**

15      In addition to this litigation and the Northern District of California litigation, Plaintiff has filed

16 suit against a large number of entities and persons, claiming that they are the reason for its alleged

17 financial decline.  In August 2018, Plaintiff sued LegalZoom in Los Angeles Superior Court based on

18 allegations pled in the Northern District Action, but that were not pled in this Action (the case is now

19 stayed via order dated August 31, 2018).  (*See* Request for Judicial Notice Exs. 1 and 2.)  It also sued,

20 among others, Trademark Engine LLC, FileMy LLC, The Trademark Company, Trademarks411.com,

21 TMExpress.com & UrgentTrademark.com, and MyCorporation Business Services, Inc.  (*See* Request

22 for Judicial Notice Exs. 3–9.)[3]

---

23 [3] (Request for Judicial Notice Ex. 3:  *LegalForce RAPC Worldwide, P.C. et al v. Trademark Engine*

24 *LLC et al*, Case No. 3:17-cv-07303-MMC, ECF 1, ¶ 78 ("[A]s a result of Trademark Engine's false
   and misleading advertisements, Plaintiffs have been injured, including but not limited to, decline in

25 sales and market share, loss of goodwill, and additional losses and damages."); Ex. 4: *Abhyanker et al
   v. FileMy, LLC et al*, Case No. 3:17-cv-07331-MMC, ECF 1, ¶ 84 (same, but blaming Legal-
26 Sherpa.com); Ex. 5: *Abhyanker et al v. Greenside et al*, Case No. 3:17-cv-07354-MMC, ECF 1, ¶ 86
   (same, but blaming Trademarks411.com); Ex. 6: *LegalForce RAPC Worldwide P.C. et al v. Swyers et*
27 *al*, Case No. 3:17-cv-07318-MMC, ECF 1, ¶ 90 (same, but blaming The Trademark Company); Ex.
   7: *LegalForce RAPC Worldwide P.C. et al v. Demassa*, Case No. 3:18-cv-00043-MMC, ECF 1, ¶ 70
28 (same, but blaming TMExpress.com & UrgentTrademark.com); Ex. 8: *LegalForce RAPC Worldwide
   P.C. et al v. Cheie et al*, Case No. 3:18-cv-00127-MMC, ECF 1, ¶ 85 (same, but blaming ACAEE);

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

E.     **Allegations in Complaint in this Action.**

The claims alleged in this Complaint are based entirely on the domain name LegalZoomTrademarkia.com (previously defined as the "Disputed Domain"). (¶ 23.)

1.     **The Alleged Trademarks at Issue.**

Plaintiff's claims are premised on its alleged ownership of the marks "TRADEMARKIA," "LEGALFORCE" and "LEGALFORCE TRADEMARKIA." (¶ 8.)   Nowhere, however, does the Complaint allege that LegalZoom used the term "LegalForce" in any way.

2.     **LegalZoom's Purported Registration of and Redirection From the Disputed Domain.**

Plaintiff alleges that LegalZoom registered the Disputed Domain in 2012 and passively held it for almost two years. (¶ 23.)   The Complaint does not allege that any landing page was accessible at the Disputed Domain during this period, nor does it purport to identify what information (if any) was displayed. (*Id.*)

Plaintiff further alleges that in 2014, LegalZoom began, for the first time, redirecting Internet traffic from the Disputed Domain to its homepage LegalZoom.com.[4]   (*Id.*)   On LegalZoom's homepage, Plaintiff alleges that LegalZoom's logo is prominently displayed, (¶ 47), and that there is no mention of Trademarkia or other affirmative indication that any of the services identified are offered by or affiliated with Trademarkia, (¶ 50).   Aside from these two allegations, the Complaint alleges nothing about the contents of LegalZoom's homepage—*e.g.*, whether the homepage identifies LegalZoom's service offerings, and if so, which services are identified.   Notably, Plaintiff does not allege that LegalZoom's trademark watch and monitoring services—*i.e.*, the services Plaintiff alleges it competes with LegalZoom to provide consumers—are even mentioned on the LegalZoom homepage.

---

Ex. 9: *LegalForce RAPC Worldwide P.C. et al v. MyCorporation Business Services, Inc. et al*, Case No. 3:18-cv-00142-MMC, ECF 1, ¶ 119 (same, but blaming MyCorporation).)

[4] Plaintiff acknowledges that currently the Disputed Domain does not redirect to any webpage. (¶ 76.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

3.      **Plaintiff's Alleged Injury From the Disputed Domain.**

Plaintiff claims that as a result of LegalZoom's "infringing use"—*i.e.*, LegalZoom's purported registration of the Disputed Domain in 2012 and LegalZoom's purported redirection beginning in 2014—Plaintiff sustained "significant monetary damage and harm to Trademarkia's brand and reputation, and has caused significant consumer confusion as to the commercial source of Trademarkia's services." (¶ 1.)  Plaintiff claims that LegalZoom's conduct is directly responsible for Plaintiff's decline in trademark watch and monitoring services revenue and market share since 2012. (¶ 19.)  Plaintiff alleges no well-pled facts to support these implausible conclusions.

For instance, the Complaint's allegations regarding reputational harm are wholly conclusory. (*See, e.g.*, ¶ 66 ("As a direct and proximate result of Defendant's infringing activities, Trademarkia has suffered irreparable injury to Trademarkia's business, reputation, and goodwill in its federally registered TRADEMARKIA Marks . . .").)  Moreover, as to the financial harm Plaintiff allegedly suffered, the Complaint contains no facts that LegalZoom took any action beyond passive ownership of the Disputed Domain prior to 2014.  As such, Plaintiff's claim of damages between 2012 and 2014 is unsupported.  As for the harm Plaintiff allegedly suffered in 2014 and beyond, when LegalZoom was allegedly redirecting traffic from the Disputed Domain to the LegalZoom homepage, the Complaint lacks facts indicating that any prospective consumers would stumble upon the Disputed Domain in the first place (much less choose to purchase services from LegalZoom rather than Trademarkia as a result).  Plaintiff does not allege facts as to whether prospective consumers could locate the Disputed Domain via an Internet search engine, whether LegalZoom actually promoted the Disputed Domain to any prospective consumers,  whether any prospective consumers knew of the Disputed Domain and used it to make a purchase of trademark watch and monitoring services on LegalZoom.com, or whether there was any market confusion at all and how it may have negatively impacted Plaintiff's revenues.

III.    **LEGAL STANDARDS ON A MOTION TO DISMISS.**

A.      **Federal Rule of Civil Procedure 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

motion, a complaint must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Indeed, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Additionally, the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### B.   Federal Rule of Civil Procedure 12(b)(1).

The Article III "case or controversy" requirement "ensure[s] that federal courts do not exceed their authority" by limiting subject matter jurisdiction to those plaintiffs that have standing.  *Spokeo*, 136 S. Ct. at 1547.  To plead Article III standing, "the plaintiff must 'clearly . . . allege facts demonstrating'" that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547–48.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

Where a plaintiff fails to plead Article III standing, its complaint is subject to dismissal under Rule 12(b)(1).  *See Smith v. Bank of Am., N.A.*, 679 F. App'x 549, 550 (9th Cir. 2017).  Where a defendant challenges a plaintiff's Article III standing based on the insufficiency of the allegations in the complaint, a court applies the same standard of review it applies on a motion to dismiss under Rule 12(b)(6).  *See Stevens v. Harper*, 213 F.R.D. 358, 370 (E.D. Cal. 2002) ("On a motion to dismiss for lack of standing, . . . the court is not obliged to accept allegations of future injury which are overly generalized, conclusory, or speculative" and "[i]n the absence of such specific factual allegations, the court may not assume that jurisdiction exists by 'embellishing otherwise deficient allegations of standing.'" (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 156 (1990))); *see also Colony Cove Props., LLC v. City of Carson,* 640 F.3d 948, 955 (9th Cir. 2011) (applying *Iqbal*'s standards to a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

**DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD**

## IV.    PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE ANY OF ITS CLAIMS.

Article III standing is a threshold issue.  Thus, where the plaintiff lacks Article III standing, the Court need not delve into the merits of the case.  *See Spokeo*, 136 S. Ct. at 1547.  Here, Plaintiff fails to plead facts showing that it has suffered (A) a "concrete and particularized" reputational injury, or (B) an economic injury that is "fairly traceable" to LegalZoom's alleged conduct.

### A.    Plaintiff's Allegations of Reputational Injury Are Speculative.

Plaintiff's only allegations of reputational injury are conclusory statements that fail to identify any concrete and particularized harm.  (*See, e.g.*, ¶ 66 ("As a direct and proximate result of Defendant's infringing activities, Trademarkia has suffered irreparable injury to Trademarkia's business, reputation, and goodwill in its federally registered TRADEMARKIA Marks . . .").)  "While [the plaintiff] need not plead injury with great detail, it must at least allege **some factual matter** supporting a reasonable inference that [the plaintiff] was injured by [the defendant]."  *C5 Med. Werks, LLC v. Ceramtec GmbH*, 2016 WL 4092955, at *3 (D. Colo. June 10, 2016) (quoting *Nature's Earth Prods., Inc. v. Planetwise Prods., Inc.*, 2010 WL 4384218, at *2–3 (S.D. Fla. Oct. 28, 2010)).  The Complaint here, however, lacks any factual matter.  *See NorthBay Healthcare Grp. v. Kaiser Found. Health Plan, Inc.*, 2018 WL 4096399, at *7 (N.D. Cal. Aug. 28, 2018) ("[N]aked assertions devoid of further factual enhancement are insufficient to state a claim." (citation omitted)).

To illustrate: although the Complaint contains the conclusory and absurd allegations that LegalZoom **intended** to mislead consumers, (*see, e.g.*, ¶ 17), Plaintiff does not plead a concrete injury because the Complaint does not allege that any consumer **actually encountered** the Disputed Domain. Allegations of intent to mislead do not alone establish Article III standing.  *See Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.*, 2018 WL 3122172, at *4 (D. Kan. June 26, 2018) (holding that plaintiff failed to allege concrete injury where complaint contained allegations of defendants' **intent** to "gain a competitive edge in the marketplace or to undermine business competitors," but failed to allege "that this result was **achieved**" (emphasis added)).  And even if allegations of intent to deceive could establish Article III standing, which they do not, the Complaint's allegations still fall short of plausible.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

Here, the Complaint does not include any plausible allegations that any prospective consumer ever found or could find the Disputed Domain.  There is no allegation Internet search engines would show the Disputed Domain to users who searched for either party's trademark, much less a plausible allegation that any consumer would type the URL of the Disputed Domain into their browser with the mistaken belief that it was in some way affiliated with Plaintiff.  "When people go shopping online, they don't start out by typing random URLs containing trademarked words hoping to get a lucky hit." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1178 (9th Cir. 2010).  Thus, there is no reason to believe that anyone would accidentally type in the Disputed Domain when searching for Trademarkia, especially in light of the fact that **the Disputed Domain begins with LegalZoom**.  If a customer is looking for Trademarkia, it is nonsensical and implausible to posit that they would begin by typing in the name and trademark of a different company.  *See Bassett v. ABM Parking Servs., Inc.,* 883 F.3d 776, 778, 782–83 (9th Cir. 2018) (holding there was no Article III standing for an alleged violation of a statute prohibiting the printing of credit card expiration dates on receipts where there was no allegation that any third party saw the receipt at-issue).

In short, Plaintiff's conclusion that it suffered reputational harm relies on leaps of logic and speculation.  Neither are adequate to plead Article III standing.  *See Cone Corp. v. Fla. Dep't of Transp.,* 921 F.2d 1190, 1210 (11th Cir. 1991) ("[A] federal court should not speculate concerning the existence of standing or 'piece together support for the plaintiff.'" (quoting *Anderson v. City of Alpharetta,* 770 F.2d 1575, 1582 (11th Cir. 1985) (per curiam))).

**B.     Plaintiff's Allegations Do Not Indicate That LegalZoom Is a Substantial Factor in Causing Plaintiff's Purported Economic Injury.**

Plaintiff also alleges that it has suffered "lost revenue and market share, reduced asset value and increased advertising costs" "[a]s a direct result of LegalZoom's infringing conduct." (¶ 19.)  As with Plaintiff's allegations of reputational injury, these claims are uncorroborated by any facts.

To start, there are no allegations in the Complaint regarding Plaintiff's alleged advertising costs, let alone allegations that LegalZoom's alleged conduct vis-à-vis the Disputed Domain increased those costs.  Likewise, the Complaint lacks factual support for its claim of reduced asset value.  As such, these allegations do not establish Article III standing.  *See McGee v. Diamond Foods, Inc.,* 2016

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

WL 816003, at *5 (S.D. Cal. Mar. 1, 2016) ("[A] plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." (citing *Schmeir v. U.S. Ct. of Appeals for the Ninth Cir.*, 279 F.3d 817, 820 (9th Cir. 2001))).

In support of its claim of lost revenue, Plaintiff alleges that through 2012 its business was experiencing steady growth; following 2012, its revenues have declined.  (¶ 19.)  But Plaintiff fails to plead facts showing that its purported decline in revenues is "fairly traceable" to LegalZoom's alleged conduct for two reasons.

First, the timeframe of the alleged revenue decline requires the Court to draw unwarranted and implausible inferences in order to find standing.  The alleged decline in revenue purportedly began in 2012. (¶ 19.)  Yet, the alleged redirect at the Disputed Domain purportedly began in 2014, two years into the revenue decline.  (¶¶ 34, 42.)  The timing of the decline, therefore, does not support an inference that the decline is "fairly traceable" to the purported redirection from the Disputed Domain.  *See Cal. Ass'n of Physically Handicapped, Inc. v. F.C.C.*, 778 F.2d 823, 827 (D.C. Cir. 1985) (finding alleged injury not traceable to the defendant's conduct because the "alleged injury occurred before, existed at the time of, and continued unchanged after the [challenged conduct]").

Second, Plaintiff failed to identify any customers who even encountered the Disputed Domain, let alone any who purchased from LegalZoom as a result of the Disputed Domain.  Instructive in this regard is the Southern District of California's decision in *Two Jinn, Inc. v. Government Payment Service, Inc.*, 2010 WL 1329077 (S.D. Cal. Apr. 1, 2010).  The plaintiff there, a "licensed bail agent," contended that the defendant engaged in bail transactions without a valid license in violation of California's unfair competition laws.  *Id.* at *1.  The plaintiff asserted an injury in fact "on the basis that '[s]ome of the diverted bail customers certainly would have purchased bail from [the plaintiff]" if not for the defendant's unfair competition.  *Id.* at *3.  The court found that this was insufficient because the plaintiff had not identified any "customers who would have purchased bail from sources other than" the defendant, or that customers "would have chosen the services of [the plaintiff] over the other various bail services."  *Id.*

The Complaint in this action suffers from the same defects.  For instance, the Complaint simply concludes that "Trademarkia suffered lost revenue and market share."  (¶ 19.)  This allegation does

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

not establish Article III standing, however, because it fails to point to any consumer that selected LegalZoom over Plaintiff, or that would have withheld trade from Plaintiff because of the Disputed Domain. *Cf. Two Jinn, Inc.*, 2010 WL 1329077, at *3.[5] Likewise, the Complaint's purported reliance on "expert" witness allegations regarding the "potential for linguistic confusion" between "LEGALZOOMTRADEMARKIA and LEGALFORCETRADEMARKIA," (¶ 46) is improper. "Conclusory allegations and speculation carry no additional weight" at the pleading stage merely because a plaintiff alleges the statements are made by a retained expert. *See DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001).[6]

In short, Plaintiff offers no well pled **facts** to show that any prospective consumers even knew of the Disputed Domain, much less used it to make a purchase on LegalZoom.com. This renders Plaintiff's allegations of economic injury too "attenuated" and "conjectural" to meet Article III's standing requirements. *See Two Jinn, Inc.*, 2010 WL 1329077, at *3. Accordingly, the Complaint should be dismissed in its entirety.

## V.   THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT (COUNTS I, II, AND IV).

Plaintiff asserts three separate claims for trademark infringement—two under the Lanham Act (15 U.S.C. §§ 1114, 1125(a)) and one under California common law—all based on LegalZoom's purported "use" of "Plaintiff's trademark as a domain name to identify LegalZoom's website." (¶ 43.) None of these claims succeeds, however, because Plaintiff did not sufficiently plead a likelihood of

---

[5] Likewise insufficient to support standing is the allegation that one of Plaintiff's alleged employees "believes that Trademarkia has lost sales because of [customer] confusion" between "LEGALFORCE and LEGALFORCE TRADEMARKIA." (¶ 45.) This allegation fails for a number of reasons. First, an employee's unsupported speculation, cannot take the place of a fact. *See Solis v. City of Fresno,* 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the *post-Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim."). Second, the speculation is irrelevant. The purported "confusion" the alleged employee references is customers' confusion about the fact that Plaintiff allegedly uses two names for itself (LegalForce and Trademarkia)—something entirely unrelated to LegalZoom and the current dispute.

[6] It is improper to include reference to an expert opinion in a Complaint. *See DeMarco,* 149 F. Supp. 2d at 1219–22 (striking expert opinion offered in support of an amended complaint because it would force the court "to confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage").

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

1  confusion.  Additionally, Plaintiff's claim under Section 1125(a) of the Lanham Act fails due to the

2  Complaint's failure to satisfy Rule 9(b) and plead sufficient facts to establish statutory standing.

3  **A.   Plaintiff's Claims for Trademark Infringement (Counts I, II, and IV) Fail Because**
   **Plaintiff Did Not Sufficiently Plead a Likelihood of Confusion.**

4

5  Plaintiff's three trademark infringement claims ask whether the defendant's use of the mark

6  on competing or related goods creates a likelihood of consumer confusion.  *See Ketab Corp. v.*

7  *Mesriani & Assocs., P.C.*, 734 F. App'x 401, 407 (9th Cir. 2018).  "The test for likelihood of confusion

8  is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin

9  of the good or service bearing one of the marks."  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135,

10  1140 (9th Cir. 2002) (internal quotation marks and citation omitted); *see Bosley Med. Inst., Inc. v.*

11  *Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("[T]rademark infringement protects only against mistaken

12  **purchasing decisions** and not against confusion generally." (citation omitted)).  "The *Network*

13  *Automation* Court also issued a reminder that . . . as the novelty of the Internet evaporates and online

14  commerce becomes commonplace, consumers have grown more sophisticated."  *Nordstrom, Inc. v.*

15  *7525419 Canada Inc.*, 2012 WL 12507605, at *5 (W.D. Wash. Dec. 27, 2012) (internal quotation

16  marks and citations omitted).  In light of this, courts recognize that consumers "fully expect to find

17  some sites that aren't what they imagine based on a glance at the domain name or search engine

18  summary."  *Id.* (citation omitted); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,

19  638 F.3d 1137, 1152 (9th Cir. 2011) ("We determined that it was unlikely that a reasonably prudent

20  consumer would be confused into believing that a domain name that included a product name would

21  necessarily have a formal affiliation with the maker of the product, as '[c]onsumers who use the

22  internet for shopping are generally quite sophisticated about such matters.'" (quoting *Toyota,* 610 F.3d

23  at 1178)).

24  The Complaint advances two theories to support likelihood of confusion: (1) that LegalZoom's

25  use of the Disputed Domain is likely to result in consumer confusion at the point of purchase, and

26  (2) that the existence of the Disputed Domain is likely to cause "initial interest confusion."  Neither

27  succeeds.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

1.   **Plaintiff Does Not Plausibly Allege Likelihood of Confusion at the Point of Making a Purchasing Decision.**

The Complaint takes aim at two alleged infringing acts by LegalZoom: (a) its alleged registration of the Disputed Domain; and (b) its alleged redirection of Internet traffic from the Disputed Domain to LegalZoom's homepage. Neither alleged act supports Plaintiff's claims for trademark infringement.

  a.   **LegalZoom Cannot Be Held Liable for Trademark Infringement From 2012-2014 Because Registration of a Domain Name, Without More, Is Not Infringement.**

To the extent Plaintiff purports to include mere registration of the Disputed Domain in "infringing use," Plaintiff is wrong. Registering a domain name similar to another's trademark is not, in and of itself, trademark infringement. *See, e.g.*, *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1035 (9th Cir. 2011) ("Registration of a domain name without more does not constitute service mark or trademark infringement."); *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 957 (C.D. Cal. 1997) ("[S]omething more than the registration of the name is required before the use of a domain name is infringing.").

For example, in *GoPets*, the Ninth Circuit held that several domains that were merely registered by the defendants, without more, did not infringe a trademark in violation of the Lanham Act. 657 F.3d at 1035. The Ninth Circuit stated infringement occurred in connection with only one of the domains—where the defendant placed website text at the gopets.com domain indicating that it was "GoPets.com the official online website." *Id.* But, in the present case, Plaintiff alleges no such statement was included on a page accessible at the Disputed Domain. To the contrary, Plaintiff alleges that "on or about June 8, 2012, LegalZoom purchased the abandoned domain name LegalZoomTrademarkia.com **but did not use it**" for almost two years. (¶ 23 (emphasis added).) Without any allegations beyond the domain name registration, like the confusing website text in *GoPets*, Plaintiff's claims for trademark infringement prior to 2014 based on LegalZoom's registration of the Disputed Domain fail. *See GoPets*, 657 F.3d at 1035.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

**DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD**

1

**b.      LegalZoom's Purported Redirection From the Disputed Domain to LegalZoom.com Is Not Likely to Cause Confusion.**

2

3      Plaintiff also alleges LegalZoom began "diverting traffic" from the Disputed Domain to

4   LegalZoom.com in 2014, (¶ 23), which was likely to cause confusion "as to the origin of LegalZoom's

5   goods and services and/or as to the sponsorship by, affiliation with, and/or connection to

6   Trademarkia," (¶ 55; *see also, e.g.,* ¶ 47 ("Consumers see LegalZoom's homepage LegalZoom.com

7   when accessing Legal[Zoom]Trademarkia.com.   LegalZoom's light-and-dark-blue logo, . . . is

8   prominently shown on the top of its homepage.")[7], ¶ 50 ("LegalZoom's homepage or the various

9   landing pages of redirection . . . has no disclaimer which clearly labels that the website is not the

10  website of Trademarkia, or that the website has no association with Trademarkia, or that Trademarkia

11  is not acquired by or not part of LegalZoom."); *accord* ¶¶ 60, 87).   This theory of infringement fairs

12  no better than Plaintiff's allegations regarding domain name registration.   Indeed, the Ninth Circuit

13  previously considered and rejected this argument in *Multi Time Machine, Inc. v. Amazon.com, Inc.*,

14  804 F.3d 930 (9th Cir. 2015).[8]

15      In *Multi Time Machine*, defendant Amazon was accused of presenting shoppers searching for

16  one trademark with results clearly associated with a different brand.   804 F.3d at 936 ("[W]hen a

17  customer searches for MTM Special Ops watches on Amazon.com, the search results page displays .

18  . . numerous watches manufactured by MTM's competitors and offered for sale by Amazon, without

19  explicitly informing the customer that Amazon does not carry MTM watches.").   The plaintiff

20  "argue[d] that in order to eliminate the likelihood of confusion, Amazon must change its search results

21  page so that it explains to customers that it does not offer MTM watches for sale before suggesting

22  alternative watches to the customer." *Id.* at 938.   The Ninth Circuit disagreed.   The court noted "[t]he

23

24  [7] Plaintiff alleges that "[c]onsumers see LegalZoom's homepage LegalZoom.com when accessing Legal**Force**Trademarkia.com," (¶ 47 (emphasis added)).   LegalZoom assumes this is a typo, but if not, Plaintiff is responsible for this redirection and any subsequent confusion. (*See* ¶ 15 ("Trademarkia has continually owned the domain LegalForceTradmarkia.com since 2013.").)

25

26  [8] Although courts in the Ninth Circuit sometimes look to the eight-factor test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) to assess likelihood of confusion in *traditional* trademark infringement cases, the Ninth Circuit has recognized that the *Sleekcraft* factors are not well-suited for cases, like this one, involving non-traditional uses of trademarks on the Internet when the plaintiff's theory of infringement does not align with the *Sleekcraft* factors.   *See e.g.*, *Multi Time Machine*, 804 F.3d at 938; *Network Automation*, 638 F.3d at 1152 (9th Cir. 2011).

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

**DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD**

search results page makes clear to anyone who can read English that Amazon carries only the brands that are clearly and explicitly listed on the web page.  The search results page is unambiguous—. . . no reasonable trier of fact could conclude that Amazon's search results page would likely confuse a reasonably prudent consumer accustomed to shopping online as to the source of the goods being offered."  *Id.*; *see also id.* at 939 ("[I]t is highly unlikely that a reasonably prudent consumer accustomed to shopping online would be confused as to the source of the goods offered for sale on Amazon's web page" where "each product listed for sale is clearly labeled with the product's name and manufacturer and a photograph, and no product is labeled with MTM's mark.").

Similar to the search results at issue in *Multi Time Machine*, here the website purportedly linked to the Disputed Domain is alleged to be unambiguously associated with LegalZoom only.  Thus, to the extent a customer is looking for Plaintiff at the Disputed Domain, he knows he has been presented with an alternative option upon viewing the LegalZoom homepage.  In fact, because the hypothetical visitor of the Disputed Domain would not have been looking solely for "Trademarkia," but rather "LegalZoomTrademarkia.com"—a term that includes LegalZoom's trademark— Plaintiff here is even further from having a meritorious claim than the unsuccessful plaintiff in *Multi Time Machine*.

Just as "the clear labeling Amazon uses on its search results page" meant that "no reasonable trier of fact could conclude that Amazon's search results page would likely confuse a reasonably prudent consumer accustomed to shopping online as to the source of the goods being offered," *id.* at 938, Plaintiff does not plead facts that would plausibly establish that any reasonably prudent consumer who was allegedly redirected from LegalZoomTrademarkia.com to LegalZoom.com could be confused as to the source of the services offered on the unambiguous landing page.[9]

---

[9] Plaintiff also alleges "LegalZoom deliberately redirected its website LegalZoomTrademarkia.com to its home page **and included false claims of its connection to the Trademarkia.com website.**"  (¶ 65 (emphasis added).)  Nowhere in the Complaint, however, does Plaintiff identify the content of these "false claims" that purportedly appeared on LegalZoom's homepage.  Accordingly, the Court should disregard this conclusory allegation.  *See Twombly*, 550 U.S. at 555 ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

Cooley LLP
Attorneys At Law
San Diego

16.

Defendant LegalZoom's Motion to
Dismiss Complaint; Memo of P. & A.
4:18-cv-07274-EJD

2.     **The Allegations Regarding "Initial Interest Confusion" Are Not Plausible.**

The Complaint also makes passing reference to the often-criticized[10] doctrine of initial interest confusion as an alternate theory supporting its trademark infringement claims.  (¶ 55.)  Plaintiff's allegations, however, fail to align this case with those narrow circumstances where the Ninth Circuit has previously recognized this doctrine as the basis for actionable trademark confusion apart from the context of purchasing decisions.

"Initial interest confusion occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion."  *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002) (internal quotation marks and citation omitted).  Here, the Complaint alleges that LegalZoom's purported use of the Disputed Domain "is likely to cause initial interest confusion of consumers who are in fact searching solely for Trademarkia and/or Trademarkia's registered trademarks."  (¶ 55.) This conclusory allegation, however, suffers from a number of flaws, including: (a) the complete absence of factual allegations suggesting any consumer would have found the Disputed Domain; (b) the failure to connect the Disputed Domain with the narrow set of domains that courts have found suggest active affiliation with a plaintiff ; and (c) the unprecedented expansion necessary to subsume this alleged fact pattern within the narrow "initial interest confusion" doctrine.

a.     **Plaintiff Alleges No Facts to Suggest that a Consumer Searching for Trademarkia Would Have Found the Disputed Domain.**

The Complaint contains no allegations that LegalZoom promoted the Disputed Domain "in a manner calculated to capture initial consumer attention."  *See Interstellar Starship*, 304 F.3d at 941 (internal quotation marks and citation omitted).

---

[10] *See, e.g.*, Michael Grynberg, Trademark Litigation As Consumer Conflict, 83 N.Y.U. L. Rev. 60, 86 (2008) (noting cases that expanded the "initial interest confusion doctrine into Internet cases in which the case for any consumer harm is doubtful" have been criticized); Glynn S. Lunney, Jr., Trademarks and the Internet: The United States' Experience, 97 Trademark Rep. 931, 949–50 (2007) (explaining that the justification for the doctrine does not exist online due to the minimal costs involved with online searching).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

In the context of the Internet, the Ninth Circuit has found that use of trademarks in metatags[11] and keyword search terms are means of capturing initial consumer attention because they allow the consumer to use search engines, such as Google or Bing, to search for websites based on keywords and phrases.  *See id.* at 944–45 (discussing case finding initial interest confusion for use of trademarks in metatags); *Network Automation*, 638 F.3d at 1147 (discussing case finding potential for initial interest confusion based on unlabeled banner ads).

Here, however, Plaintiff does not allege that LegalZoom used any of Plaintiff's trademarks as keyword search terms or metatags such that a consumer searching for Trademarkia would be directed to the Disputed Domain.  Indeed, the Complaint does not allege that the Disputed Domain was accessible to consumers via any Internet search engine, nor does the Complaint plausibly allege that a consumer could have guessed or accidentally typed in the Dispute Domain in a browser. *See supra* Section IV.A.  But even an incorrect guess does not necessarily result in initial interest confusion.  *See Interstellar Starship*, 304 F.3d at 945 ("Although a consumer might incorrectly guess that United Van Lines would be found at www.united.com, such an erroneous guess does not generally amount to a likelihood of initial interest confusion." (internal citation and parenthetical omitted)).

In short, Plaintiff has alleged no facts to support its conclusory allegations that "LegalZoom actively disseminated and marketed the Disputed Domain for years," (¶ 72), or that "a consumer searching for LegalForceTrademarkia would end up getting onto LegalZoomTrademarkia.com website," (¶ 48).[12]  This alone distinguishes this case from those limited instances where the Ninth Circuit recognized the possibility of basing a trademark claim on "initial interest confusion."

---

[11] "Metatagging is inserting words into the code of a web page that help determine how it appears in search results."  *GoPets*, 657 F.3d at 1028.

[12] The Complaint makes vague reference to the WayBackMachine, claiming that its "archives show that LegalZoom included the Disputed Domain as part of its 'Affiliate' commission program." (¶ 72.) But even if this were true, Plaintiff has not alleged any facts to suggest that LegalZoom, or any "Affiliate," marketed or disseminated the Disputed Domain in any way that potential consumers would see the URL associated with the Disputed Domain.

Cooley LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD

1

        **b.**     **The Domain Name Does Not Fall Within the Narrow Set of Domains That Suggest Active Affiliation with the Plaintiff.**

2

3        "Outside the special case of trademark.com, or domains that actively claim affiliation with the

4  trademark holder, consumers don't form any firm expectations about the sponsorship of a website

5  until they've seen the landing page—if then." *Toyota*, 610 F.3d at 1179. Here, however, the

6  Complaint does not allege that LegalZoom registered "trademarkia.com." *Cf. id.* ("When a domain

7  name consists **only** of the trademark followed by .com, or some other suffix like .org or .net, it will

8  typically suggest sponsorship or endorsement by the trademark holder . . . But the case where the URL

9  consists of nothing but a trademark followed by a suffix like .com or .org is a special one indeed."

10  (emphasis added)). Nor does the Complaint allege that LegalZoom registered "official-trademarkia-

11  site.com" or "we-are-trademarkia.com," which may suggest active affiliation with Plaintiff. *Cf. id.*

12  (noting that "domains like official-trademark-site.com or we-are-trademark.com affirmatively suggest

13  sponsorship or endorsement by the trademark holder"). Absent such facts, Plaintiff cannot support its

14  conclusory allegation that the Disputed Domain is "likely to cause confusion, mistake and deception .

15  . . as to the origin of LegalZoom's goods and services and/or as to the sponsorship by, affiliation with,

16  and/or connection to Trademarkia." (¶ 55; *see also* ¶¶ 60, 87.)

17

        **c.**     **The Complaint Seeks Unprecedented Expansion of the "Initial Interest Confusion" Doctrine.**

18

19        Courts in this circuit considering "initial interest confusion" in recent years have narrowed or

20  limited its application, or otherwise found reasons not to apply the doctrine to support a finding of

21  trademark infringement. *See, e.g.*, *Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1123

22  (D. Nev. 2013) (rejecting expansion of initial interest doctrine to defeat application of first sale

23  doctrine, and noting that the complaint failed to allege that defendant "purchased search engine

24  keywords incorporating [plaintiff's] marks, or that [defendant] used website metadata incorporating

25  [plaintiff's] marks—conduct at the heart of initial interest confusion on the internet"); *Karl Storz*

26  *Imaging, Inc. v. Pointe Conception Med., Inc.*, 2011 WL 13195980, at *20 (C.D. Cal. Aug. 1, 2011)

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

19.

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD**

1  (finding likelihood of initial interest confusion low given the degree of care and sophistication of the

2  consumers, and the labeling and surrounding context of the advertisements).

3       Here, Plaintiff asks this Court to go in the opposite direction and expand "initial interest

4  confusion" to a scenario where it has not been applied—*i.e.*, to a domain name containing a

5  concatenation of two trademarks (only one of which is owned by Plaintiff) that is not alleged to have

6  been promoted by LegalZoom in any way, but which allegedly redirected any hypothetical visitors

7  who stumbled upon the domain to LegalZoom's non-infringing domain and related homepage, which

8  in turn contained no reference to Plaintiff or any of Plaintiff's trademarks.  Such proposed expansion

9  should be rejected.  *See Network Automation*, 638 F.3d at 1148 (rejecting expansion of the initial

10 interest confusion doctrine).

11       **B.    Plaintiff Failed to Satisfy Rule 9(b) With Respect to Its Claim for Trademark
          Infringement Under 15 U.S.C. § 1125(a) (Count II).**

12

13      Plaintiff's false association claim is grounded in fraud.  (*See, e.g.*, ¶ 16 ("Defendant's actions

14 are willful and unlawful, [and] are calculated to deceive customers"); ¶ 17 ("LegalZoom intentionally

15 misleads consumers").)  As such, it must comply with the requirements of Rule 9(b) for pleading fraud

16 with particularity.  *See Smoothreads, Inc. v. Addventure Prod., Inc.*, 2009 WL 10671911, at *7 (S.D.

17 Cal. Sept. 29, 2009) ("A claim [under 15 U.S.C. § 1125(a) of Lanham Act] is not exempt from the

18 strictures of [Rule 9(b)].").  Yet, as discussed in Section IV.A., above, Plaintiff failed to plead any

19 specifics regarding when, where, why, and how relevant customers might become aware of the

20 Disputed Domain.

21      **C.    Plaintiff Lacks Statutory Standing to Pursue Its Claims for Trademark
          Infringement Under the Lanham Act Under 15 U.S.C. § 1125(a) (Count II).**

22

23      Section 1125(a) of the Lanham Act "creates two distinct bases of liability: false association

24 [which Plaintiff has called "trademark infringement" in its Complaint], § 1125(a)(1)(A), and false

25 advertising, § 1125(a)(1)(B)."  *Lexmark*, 572 U.S. at 122.  Section 1125(a) provides standing to

26 institute a civil action under its provisions to "any person who believes that he or she is or is likely to

27 be damaged by" alleged false association or false advertising.  15 U.S.C. § 1125(a).  Accordingly, in

28 *Lexmark*, the Supreme Court held that "a plaintiff suing under § 1125(a) ordinarily must show that its

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

20.

**DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD**

economic or reputational injury flows directly from the deception wrought by the defendant's advertising; **and that occurs when deception of consumers causes them to withhold trade from the plaintiff**." *Lexmark*, 572 U.S. at 133 (emphasis added)).

Although *Lexmark* concerned only false advertising claims, multiple courts have assumed that its proximate causation requirements apply equally to false association claims. *See 578539 B.C., Ltd. v. Kortz*, 2014 WL 12572679, at \*6 n.54 (C.D. Cal. Oct. 16, 2014) ("Although few courts have had the opportunity to consider whether *Lexmark's* discussion of statutory standing applies equally to § 43(a) false association claims, some have assumed that it does." (citing *Lundgren v. AmeriStar Credit Sols., Inc.*, 40 F. Supp. 3d 543, 551 n.4 (W.D. Pa. 2014); *Ahmed v. Hosting.com*, 28 F. Supp. 3d 82, 90 (D. Mass. 2014))).  A plaintiff's standing for a claim for "false association" is based on the exact same statutory language as basis for standing for a claim for "false advertising." *See* 15 U.S.C. § 1125(a); *see also Lundgren*, 40 F. Supp. 3d at 551 (noting that "the Court of Appeals for the Third Circuit previously held that, for purposes of the standing analysis, there was no distinction between the two types of actions" under 15 U.S.C. § 1125(a)).

Here, Plaintiff alleges that LegalZoom violated Section 1125(a)'s prohibition on false association, and as a result, Plaintiff "suffered irreparable injury to [its] business, reputation, and goodwill." (¶ 66.) Plaintiff, however, does not allege plausible facts to support this conclusion.  For example, Plaintiff does not allege that the Disputed Domain was accessible to consumers via any Internet search engine.  Nor does Plaintiff make any credible allegations that a consumer might accidentally type in the Disputed Domain hoping to find Trademarkia.  Indeed, Plaintiff does not allege that a single consumer ever visited the Disputed Domain, much less that such consumer ultimately purchased services from LegalZoom thinking that LegalZoom was in some way affiliated with Plaintiff.  In short, Plaintiff has not pled that LegalZoom's "use" of the Disputed Domain caused consumers to "withhold trade from [P]laintiff." *See Lexmark*, 572 U.S. at 133.

Moreover, Plaintiff's allegations attributing its decline in revenue to LegalZoom's purported use of the Disputed Domain are belied by Plaintiff's allegations in other lawsuits filed within the past year.  For instance, Plaintiff has blamed a whole host of its alleged competitors for its loss of revenue and goodwill, based on arguments ranging from antitrust violations to false advertising to unauthorized

Cooley LLP
Attorneys At Law
San Diego

21.

Defendant LegalZoom's Motion to
Dismiss Complaint; Memo of P. & A.
4:18-cv-07274-EJD

1   practice of law.  *See* Request for Judicial Notice Exs. 3–9.  Speculating as to the basis for Plaintiff's

2   harm does not state a claim.  *See Twombly*, 550 U.S. at 545 (2007) ("Factual allegations must be

3   enough to raise a right to relief above the speculative level.").

4        Thus, Plaintiff's failure to plead statutory standing is another separate basis to dismiss Count II.

5   **VI.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.**

6        Although this is Plaintiff's first complaint in this action, it is merely a continuation of the

7   litigation that has been ongoing since December 2017.  This is now Plaintiff's sixth complaint in this

8   ongoing saga.  Plaintiff's repeated defective pleadings have imposed substantial costs on LegalZoom.

9   Had Plaintiff complied with Judge Chesney's prior orders that it must request approval from the Court

10   to file another complaint, LegalZoom may have been spared some of these costs.  Instead, Plaintiff

11   opted to circumvent Judge Chesney's order by voluntarily dismissing its prior complaint and filing a

12   new complaint before a new court and new judge.  In other words, "LegalForce abused the judicial

13   process by judge-shopping." (*LegalForce, Inc. v. LegalZoom.com, Inc.*, Case No. 18-cv-06147, ECF

14   27 [Order Granting Motion to Transfer].)  Moreover, Plaintiff's repeated past failed attempts at

15   pleading, suggests that no further amendment would cure the Complaint's deficiencies.  *See, e.g.,*

16   *Nkwuo v. Santa Clara Cty. Human Res.*, 2017 WL 3605229, at *4 (N.D. Cal. Aug. 21, 2017) (denying

17   leave to amend where, *inter alia,* the plaintiff did "not given any indication that he would be able to

18   cure [the complaint's] deficiencies if given a further opportunity to do so").  For all these reasons,

19   LegalZoom requests that the Court dismiss Plaintiff's claims with prejudice.  *See Foman v. Davis*, 371

20   U.S. 178, 182 (1962) (denial of leave to amend proper where "undue delay, bad faith or dilatory motive

21   on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the

22   amendment, [or] futility of amendment" exists).

23   **VII.   CONCLUSION**

24        For the foregoing reasons, the Complaint should be dismissed with prejudice.

25   Dated:        December 11, 2018            COOLEY LLP

26

27            */s/ Michelle C. Doolin*
             Michelle C. Doolin (179445)
             Attorneys for Defendant
28           LEGALZOOM.COM, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

22.

**DEFENDANT LEGALZOOM'S MOTION TO
DISMISS COMPLAINT; MEMO OF P. & A.
4:18-CV-07274-EJD**