1   COOLEY LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   101 California Street, 5th Floor
    San Francisco, CA 94111
3   Telephone:   (415) 693-2000
    Facsimile:   (415) 693-2222
4
    COOLEY LLP
5   MICHELLE C. DOOLIN (179445) (mdoolin@cooley.com)
    DARCIE A. TILLY (239715) (dtilly@cooley.com)
6   4401 Eastgate Mall
    San Diego, CA 92121
7   Telephone:   (858) 550-6000
    Facsimile:   (858) 550-6420
8
    COOLEY LLP
9   JOHN PAUL OLEKSIUK (283396) (jpo@cooley.com)
    1333 2nd Street, Suite 400
10  Santa Monica, CA 90401
    Telephone:   (310) 883-6400
11  Facsimile:   (310) 883-6500

12  Attorneys for Defendant LEGALZOOM.COM, INC.

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16

17  LEGALFORCE, INC., a Delaware          Case No. 3:18-cv-07274-MMC
18  corporation,
                                          **DEFENDANT LEGALZOOM.COM,**
19              Plaintiff,                **INC.'S NOTICE OF MOTION AND**
                                          **MOTION TO DISMISS THE FIRST**
20       v.                               **AMENDED COMPLAINT;**
                                          **MEMORANDUM OF POINTS AND**
21  LEGALZOOM.COM, INC., a Delaware       **AUTHORITIES**
    corporation,
22                                        Date:        May 10, 2019
                Defendant.                Time:        9:00 a.m.
23                                        Judge:       Hon. Maxine M. Chesney
                                          Location:    Courtroom 7
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................... 1

STATEMENT OF RELIEF SOUGHT ................................................................... 1

STATEMENT OF ISSUES .................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

I.      INTRODUCTION. ....................................................................................... 2

II.     BACKGROUND. ......................................................................................... 3

     A.     The Parties. ...................................................................................... 3

     B.     Procedural History. .......................................................................... 4

     C.     Key Allegations in the FAC. ............................................................ 4

           1.     The Alleged Trademarks at Issue. ......................................... 4

           2.     Alleged Registration and Redirection of Disputed Domain by LegalZoom. ............................................................................. 5

           3.     Plaintiff's Alleged Injury from the Disputed Domain. ........... 6

III.    LEGAL STANDARDS ON A MOTION TO DISMISS. ............................... 9

     A.     Federal Rules of Civil Procedure 8, 9 and 12(b)(6). ...................... 9

     B.     Federal Rule of Civil Procedure 12(b)(1). ..................................... 10

IV.    PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE ANY OF ITS CLAIMS. .................................................................................................. 10

     A.     Plaintiff's Allegations of Reputational and Economic Injury Are Speculative. ........ 11

     B.     Plaintiff's Allegations Do Not Indicate that LegalZoom Is a Substantial Factor in Causing Plaintiff's Purported Economic Injury. ................................................... 13

V.     THE FAC FAILS TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT (COUNTS I, II, IV). ................................................................................... 15

     A.     Plaintiff's Claims for Trademark Infringement (Counts I, II, and IV) Fail Because Plaintiff Did Not Sufficiently Plead a Likelihood of Confusion. ............... 16

           1.     LegalZoom's Purported Redirection from the Disputed Domain to LegalZoom.com Is Not Likely to Cause Confusion. .................... 17

           2.     The Allegations Regarding "Initial Interest Confusion" Are Not Plausible. ............................................................................. 19

               a.     Plaintiff Alleges No Facts to Suggest that a Consumer Searching for Trademarkia Would Have Found the Disputed Domain. ............ 20

               b.     The Domain Name Does Not Fall Within the Narrow Set of Domains that Suggest Active Affiliation with the Plaintiff. ............. 21

               c.     The FAC Seeks Unprecedented Expansion of the "Initial Interest Confusion" Doctrine. ........................................... 22

**TABLE OF CONTENTS**
(continued)

Page

B.    Plaintiff's Claims for Trademark Infringement (Counts I, II, and IV) Also Fail Because Unjust Enrichment Is Not a Valid Form of Injury, nor Is a Claim for Unjust Enrichment Pled. ........................................................................................... 22

C.    Plaintiff Failed to Satisfy Rule 9(b) with Respect to Its Claim for Trademark Infringement Under 15 U.S.C. § 1125(a) (Count II). .................................................. 23

D.    Plaintiff Lacks Statutory Standing to Pursue Its Claims for Trademark Infringement Under 15 U.S.C. § 1125(a) (Count II). .................................................. 24

VI.    CONCLUSION ............................................................................................................. 25

Cooley LLP
Attorneys At Law
Los Angeles

ii.

Defendant LegalZoom's Motion to Dismiss
First Am. Cmplt.; Memo of P. & A.
3:18-cv-07274-MMC

# TABLE OF AUTHORITIES

Page

**Cases**

*578539 B.C., Ltd. v. Kortz*,
  2014 WL 12572679 (C.D. Cal. Oct. 16, 2014)...................................................24

*Ahmed v. Hosting.com*,
  28 F. Supp. 3d 82 (D. Mass. 2014) ...................................................................24

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) .............................................................................17

*Anderson v. City of Alpharetta*,
  770 F.2d 1575 (11th Cir. 1985) (per curiam)....................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................9, 10, 15

*Bassett v. ABM Parking Servs., Inc.*,
  883 F.3d 776 (9th Cir. 2018) .............................................................................12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................15, 19, 25

*Bosley Med. Inst., Inc. v. Kremer*,
  403 F.3d 672 (9th Cir. 2005) .............................................................................16

*Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.*,
  2018 WL 3122172 (D. Kan. June 26, 2018).....................................................11

*C5 Med. Werks, LLC v. Ceramtec GmbH*,
  2016 WL 4092955 (D. Colo. June 10, 2016).....................................................11

*Colony Cove Props., LLC v. City of Carson*,
  640 F.3d 948 (9th Cir. 2011) .............................................................................10

*Cone Corp. v. Fla. Dep't of Transp.*,
  921 F.2d 1190 (11th Cir. 1991) .........................................................................13

*Cousineau v. Microsoft Corp.*,
  992 F. Supp. 2d 1116 (W.D. Wash. 2012).........................................................13

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ...............................................................................9

*DeMarco v. DepoTech Corp.*,
  149 F. Supp. 2d 1212 (S.D. Cal. 2001).............................................................15

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

iii.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

**TABLE OF AUTHORITIES**
(continued)

Page

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014) ..................................................................9

*Entrepreneur Media, Inc. v. Smith*,
 279 F.3d 1135 (9th Cir. 2002) ...............................................................16

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*,
 328 F.3d 374 (7th Cir. 2003) ...................................................................9

*GoPets, Ltd. v. Hise*,
 657 F.3d 1024 (9th Cir. 2011) ...........................................................19, 20

*Indep. Towers of Wash. v. Washington*,
 350 F. 3d 925 (9th Cir. 2003) .................................................................11

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
 304 F.3d 936 (9th Cir. 2002) ..................................................................20

*Jackson v. Cty. of Sacramento Dep't of Health & Human Servs.*,
 2017 WL 1375211 (E.D. Cal. Apr. 17, 2017)......................................9, 16

*Johnson v. Comm'n on Presidential Debates*,
 202 F. Supp. 3d 159 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017)..................................14

*Karl Storz Imaging, Inc. v. Pointe Conception Med., Inc.*,
 2011 WL 13195980 (C.D. Cal. Aug. 1, 2011)...........................................22

*Kauai Kunana Dairy Inc. v. U.S.*,
 2009 WL 4668744 (D. Haw. Dec. 8, 2009)...............................................14

*KEMA, Inc. v. Koperwhats*,
 658 F. Supp. 2d 1022 (N.D. Cal. 2009) (Chesney, J.) ................................13

*Ketab Corp. v. Mesriani & Assocs., P.C.*,
 734 F. App'x 401 (9th Cir. 2018) ............................................................16

*Knapp v. Hogan*,
 738 F.3d 1106 (9th Cir. 2013) ..................................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 188 (2014)...................................................................3, 24, 25

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)................................................................................10

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

iv.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

**TABLE OF AUTHORITIES**
(continued)

Page

*Lundgren v. AmeriStar Credit Sols., Inc.*,
  40 F. Supp. 3d 543 (W.D. Pa. 2014).............................................................24

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
  804 F.3d 930 (9th Cir. 2015) ...............................................3, 17, 18, 19

*Nature's Earth Prods., Inc. v. Planetwise Prods., Inc.*,
  2010 WL 4384218 (S.D. Fla. Oct. 28, 2010)...............................................11

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ...............................................16, 17, 20, 22

*Nordstrom, Inc. v. 7525419 Canada Inc.*,
  2012 WL 12507605 (W.D. Wash. Dec. 27, 2012) ...............................16

*NorthBay Healthcare Grp. v. Kaiser Found. Health Plan, Inc.*,
  2018 WL 4096399 (N.D. Cal. Aug. 28, 2018) ...............................11

*Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*,
  878 F.3d 1099 (8th Cir. 2018) ...............................................14

*Pirozzi v. Apple Inc.*,
  913 F. Supp. 2d 840 (N.D. Cal. 2012) ...............................................23

*S. Serv. Corp. v. Excel Bldg. Servs., Inc.*,
  2007 WL 9700655 (D. Nev. Aug. 13, 2007) ...............................14

*Smith v. Bank of Am., N.A.*,
  679 F. App'x 549 (9th Cir. 2017) ...............................................10

*Smoothreads, Inc. v. Addventure Prods., Inc.*,
  2009 WL 10671911 (S.D. Cal. Sept. 29, 2009)...............................23

*Solis v. City of Fresno*,
  2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ...............................15

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)...............................................3, 10, 12

*Stevens v. Harper*,
  213 F.R.D. 358 (E.D. Cal. 2002) ...............................................10

*Stevo Design, Inc. v. SBR Mktg. Ltd.*,
  919 F. Supp. 2d 1112 (D. Nev. 2013) ...............................................22

Cooley LLP
Attorneys At Law
Los Angeles

v.

Defendant LegalZoom's Motion to Dismiss
First Am. Cmplt.; Memo of P. & A.
3:18-cv-07274-MMC

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,

4
　　610 F.3d 1171 (9th Cir. 2010) ...................................................................12, 16, 21

*TV One LLC v. BET Networks*,

5
　　2012 WL 13012674, at *13 (C.D. Cal. 2012)................................................................23

6
*Two Jinn, Inc. v. Government Payment Service, Inc.*,

7
　　2010 WL 1329077 (S.D. Cal. Apr. 1, 2010)...........................................................14, 15

8
*Vess v. Ciba-Geigy Corp. USA*,

9
　　317 F.3d 1097 (9th Cir. 2003) .....................................................................................10

*Whitmore v. Arkansas*,

10
　　495 U.S. 149 (1990)......................................................................................................10

11
**Statutes**

12
15 U.S.C.

13
　　§ 1114..........................................................................................................................1, 15
　　§ 1125(a) ................................................................................................................ *passim*

14

**Other Authorities**

15
Federal Rules of Civil Procedure

16
　　8.........................................................................................................................................9

17
　　9........................................................................................................................... *passim*
　　12.............................................................................................................................1, 9, 10

18
Malla Pollack, Corporate Counsel's Guide to Trademark Law,

19
　　§ 7:3 Trademark watch services (August 2018 update)...................................................4

20
Mary M. Squyres and Nanette Norton, 3 Trademark Prac. Throughout the World,

21
　　§ 26:2 Trademark monitoring (April 2018 Update) ........................................................4

22
Michael Grynberg, Trademark Litigation As Consumer Conflict, 83 N.Y.U. L. Rev.

23
　　60, 86 (2008)...................................................................................................................19

Glynn S. Lunney, Jr., Trademarks and the Internet: The United States' Experience, 97

24
　　Trademark Rep. 931, 949-50 (2007).............................................................................19

25

26

27

28

Cooley LLP
Attorneys At Law
Los Angeles

vi.

**Defendant LegalZoom's Motion to Dismiss**
**First Am. Cmplt.; Memo of P. & A.**
**3:18-cv-07274-MMC**

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 10, 2019, at 9:00 a.m., or as soon after as this matter may be heard, in Courtroom 7 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, LegalZoom.com, Inc. ("LegalZoom") will, and hereby does move under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("Rules"), to dismiss Plaintiff's First Amended Complaint ("FAC") filed on March 21, 2019.  This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the pleadings and papers on file in this matter, and such other matters as may be presented to the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

LegalZoom seeks dismissal with prejudice of the entire FAC under Rule 12(b)(1) for lack of standing and dismissal of Counts I, II, and IV under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## STATEMENT OF ISSUES

1.      Whether Plaintiff LegalForce, Inc. ("Plaintiff," "LegalForce," or "Trademarkia") has Article III standing to bring its claims.

2.      Whether Plaintiff adequately alleged that LegalZoom infringed Plaintiff's trademark in violation of 15 U.S.C. § 1114 [Count I]; 15 U.S.C. § 1125(a) [Count II]; or California common law [Count IV].

3.      Whether the FAC should be dismissed with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

1.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.    INTRODUCTION.**

3         On March 13, 2019, this Court dismissed Plaintiff's complaint for failure to establish standing:

4   "Trademarkia ha[d] failed to allege any facts to support a finding that whatever loss of revenue it

5   experienced beginning in April 2014 was the result of LegalZoom's use of the challenged domain

6   name, as opposed to the cause or causes for the losses it allegedly experienced prior to that time."

7   (ECF 57 at 3.)  On March 21, 2019, Plaintiff filed its First Amended Complaint ("FAC"), bizarrely

8   doubling down on additional comparisons of its current business metrics with those from 2012.  The

9   FAC also contains additional exhibits that confirm Plaintiff's decline began in early 2013, over a year

10  earlier than the accused conduct, and that confirm the decline continued after the accused conduct

11  ceased.  Plaintiff's added allegations in the FAC further undermine the plausibility of its alleged injury.

12        The FAC continues to allege no factual basis that LegalZoom promoted and that customers

13  encountered www.LegalZoomTrademarkia.com (the "Disputed Domain").  Plaintiff adds to the FAC

14  generalized references to LegalZoom's Affiliate program and makes unfounded assumptions about

15  the program, but Plaintiff does not allege facts regarding a single example of how the Disputed Domain

16  appeared in any ads or other communications, let alone examples of any consumers encountering the

17  Disputed Domain indicating the plausibility of injury to Plaintiff.

18        Plaintiff struggles to fix its standing problem by attempting to plead "expectation damages"—

19  a contractual concept generally inapplicable to the claims in suit—and in any event not a plausible

20  theory in view of the documents Plaintiff attaches to the FAC indicating Plaintiff's alleged

21  "expectations" are based on an offer Plaintiff made for a branded user interface looking and

22  functioning nothing like the Disputed Domain.  Accordingly, this Court should end this charade and

23  dismiss the FAC, this time with prejudice, for the following reasons:

24        <u>First</u>, Plaintiff still lacks Article III standing to pursue its claims.  Although Plaintiff continues

25  to **conclude** that it has suffered reputational and economic injuries due to LegalZoom's alleged

26  registration and use of an Internet domain name that contained both LegalZoom's and Plaintiff's

27  trademarks, this conclusion remains unsupported.  There remains no fact alleged that makes it

28  plausible that prospective consumers were ever aware, or could ever be aware, of the Disputed

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

2.

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC**

Domain's existence.  As such, Plaintiff failed to plead injuries that are "concrete and particularized" and "fairly traceable" to LegalZoom's alleged conduct.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545, 1547 (2016) (citations omitted).

Second, Plaintiff still does not plead facts supporting its claims for trademark infringement. Trademark infringement requires a "likelihood of confusion" among prospective consumers as to the source or sponsorship of the products or services bearing such marks.  *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936–37 (9th Cir. 2015).  But, Plaintiff's allegations that LegalZoom's purported registration and use of the Disputed Domain are likely to create confusion as to the source or sponsorship of LegalZoom's services are conclusory, at best.  Nowhere in the FAC is there any allegation indicating a consumer was or could become aware of the Disputed Domain.  Moreover, the FAC makes clear that any potential confusion a consumer might have as to the source or sponsorship of LegalZoom's services as a result of visiting the Disputed Domain would be dispelled upon landing on LegalZoom's unambiguous homepage that clearly used only LegalZoom-related marks.

Third, Plaintiff still lacks statutory standing to pursue its claim for trademark infringement under 15 U.S.C. § 1125(a).  For many of the same reasons that Plaintiff fails to plead a likelihood of confusion and Article III standing, Plaintiff fails to adequately allege that LegalZoom's "use" of the Disputed Domain proximately caused consumers to "withhold trade from [P]laintiff"—an allegation that is needed to plead standing under the Supreme Court's opinion in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  Without allegations that consumers could locate the Disputed Domain via an Internet search engine, that LegalZoom promoted the Disputed Domain to consumers, or that consumers actually knew of the Disputed Domain and used it to make a purchase on LegalZoom.com, there are no facts sufficient to make it plausible, not just possible, that consumers withheld trade from Plaintiff because of the Disputed Domain.

In light of these multiple deficiencies, this FAC should be dismissed with prejudice.

## II.   BACKGROUND.

### A.    The Parties.

Defendant LegalZoom is a platform of people and technology that provides, *inter alia*, access to legal self-help solutions, in topic areas such as "Business Formation," "Wills and Trusts," and

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

3.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

"Intellectual Property," and pre-paid legal services plans to millions of people worldwide.  Plaintiff is a Delaware corporation that purports to offer trademark search solutions, trademark monitoring services, general legal information, and domain name registration services.  (¶ 3.)[1]

Plaintiff contends that the parties compete for customers seeking "trademark watch and monitoring services."  (¶ 4.)  Plaintiff, however, provides **no support** for this conclusory allegation, as the FAC does not describe which services Plaintiff offers as compared to LegalZoom.[2]

## B.   Procedural History.

On March 13, 2019, this Court granted LegalZoom's Motion to Dismiss the Complaint for failure to sufficiently plead injury, affording "Trademarkia leave to amend to add, if it can do so, 'particularized allegations of fact deemed supportive of [its] standing.'"  (ECF 57 at 3 (citation omitted)).  Plaintiff had alleged losses from 2012 through 2017, but the timing of these alleged losses did not support conclusory allegations that Plaintiff's losses were caused by the alleged April 2014 commencement of use of the Disputed Domain.  (*Id.*)  On March 21, Plaintiff filed its FAC.  (ECF 58.)

The present FAC is Plaintiff's *seventh* attempt at stating a claim against LegalZoom and *third* attempt at stating a claim against LegalZoom for the alleged registration and use of the Disputed Domain.  The detailed litigation history between the parties is described in LegalZoom's previous Motion to Dismiss the Complaint filed December 11, 2018.  (ECF 38 at 4-5.)

## C.   Key Allegations in the FAC.

### 1.   The Alleged Trademarks at Issue.

Plaintiff's claims are premised on its alleged ownership of its marks "TRADEMARKIA," "LEGALFORCE" and "LEGALFORCE TRADEMARKIA" (together "TRADEMARKIA Marks"). (¶ 9.)  Aside from threadbare references to LegalZoom's infringement of the TRADEMARKIA Marks

---

[1] All citations to (¶) are citations to the FAC.

[2] *See* Malla Pollack, CORPORATE COUNSEL'S GUIDE TO TRADEMARK LAW, § 7:3 Trademark watch services (August 2018 update) (services offered under umbrella term "trademark watch services" vary widely among different service providers); Mary M. Squyres and Nanette Norton, 3 Trademark Prac. Throughout the World, § 26:2 Trademark monitoring (April 2018 Update).

(*e.g.*, ¶15), nowhere does the FAC allege that LegalZoom used the term "LegalForce" itself.  Instead, the claims alleged in this FAC are based entirely on the Disputed Domain.

> ### 2.     Alleged Registration and Redirection of the Disputed Domain by LegalZoom.

Plaintiff alleges that LegalZoom registered the Disputed Domain in 2012 and passively held it for almost two years.  (¶ 47.)  Plaintiff contends that beginning in April 2014, LegalZoom started infringing its marks by redirecting any visiting traffic from the Disputed Domain to its homepage, legalzoom.com.  (*Id.*)  On LegalZoom's homepage, Plaintiff alleges that LegalZoom's logo is prominently displayed (¶ 83), and that there is no mention of Trademarkia or other affirmative indication that any of the services identified are offered by or affiliated with Trademarkia (¶ 88).  Aside from these two allegations, the FAC alleges nothing about the contents of LegalZoom's homepage—*e.g.*, whether the homepage identifies LegalZoom's service offerings, and if so, which services are identified.  Notably, Plaintiff does not allege that LegalZoom's trademark watch and monitoring services—*i.e.*, the services Plaintiff alleges it competes with LegalZoom to provide to consumers—are even mentioned on the LegalZoom homepage.

Plaintiff newly alleges in the FAC that LegalZoom "specifically requested small businesses to advertise its domains such as the Disputed Domain on LegalZoom's behalf" (¶ 22); that "LegalZoom aggressively encouraged small businesses in their LegalZoom Affiliate program[3] to infringe on Trademarkia's trademark rights by distributing to dozens if not hundreds of Publishers as [*sic*] email ads, text ads, display ads, and more" (¶ 50); and that LegalZoom "encourag[ed] hundreds of their affiliates to advertise the literal characters of the TRADEMARKIA Marks through the express characters of the Disputed Domain" (¶ 49, *see* ¶ 71).  But Plaintiff does not allege *any instances* of advertisements or communications sent by or on behalf of LegalZoom including any of the TRADEMARKIA Marks.  Plaintiff includes in the FAC numerous exhibits offered to explain LegalZoom's Affiliate program, but those exhibits do not once mention the Disputed Domain.  (*See* FAC, Exs. D-L.)  In the corresponding paragraphs of the FAC citing those exhibits, Plaintiff ***assumes***

---

[3] The FAC misstates the operations of LegalZoom's Affiliate program.  LegalZoom does not admit or accept as true the allegations regarding how the program operates.  Nevertheless, even accepting all well-pled allegations as true, the FAC should be dismissed for the reasons set forth herein.

Cooley LLP
Attorneys At Law
Los Angeles

5.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

without any factual basis that the Disputed Domain was shared with those participating in LegalZoom's Affiliate program.  (¶¶ 19-28.)

Importantly, as for the harm Plaintiff allegedly suffered when LegalZoom was allegedly redirecting traffic from the Disputed Domain to the LegalZoom homepage, the FAC lacks facts indicating that any prospective consumers would stumble upon the Disputed Domain in the first place (much less choose to purchase services from LegalZoom rather than Trademarkia as a result).

### 3.    Plaintiff's Alleged Injury from the Disputed Domain.

Plaintiff claims that as a result of LegalZoom's "infringing use"—*i.e.*, LegalZoom's purported redirection from the Disputed Domain to its homepage beginning in 2014—Plaintiff sustained "significant monetary damage and harm to Trademarkia's brand and reputation, and has caused significant consumer confusion as to the commercial source of Trademarkia's services."  (¶ 2.) Plaintiff claims that LegalZoom's conduct since 2014 is directly responsible for Plaintiff's decline in "lost revenue and market share," "reduced asset value," and "lost brand value."  (¶¶ 18, 30-34.) Plaintiff alleges no well-pled facts to support these implausible conclusions.

Despite this Court's recent ruling recognizing that a drop in revenue from 2012 to 2017 cannot plausibly result from conduct that began in April 2014 (ECF 57 at 3), Plaintiff repeats and expands its logical flaw and adds to the FAC allegations of decline from its 2012 website ranking to its 2019 ranking (¶ 32; FAC, Ex. V).  Similarly, Plaintiff includes a graphic admission that its audience peaked in early 2013, long before the alleged April 2014 first use of the Disputed Domain (¶ 31; FAC, Exs. T-U):



(FAC, Ex. T (text boxes and arrows added).)

Plaintiff also alleges damages under a quasi-contract theory of restitution for allegedly unpaid licensing fees.  (¶¶ 35-46.)  Plaintiff points to an email from Plaintiff to LegalZoom offering to co-brand LegalZoom and Trademarkia on the Trademarkia pages—which purportedly received "1.5 million unique visitors and 3 million page views."  (FAC, Ex. N.)  Plaintiff also asserts that it offered this opportunity for a monthly $120,000 fee (¶ 43)—though does not allege that LegalZoom ever accepted such terms.  From here, Plaintiff alleges that use of the Disputed Domain—for which Plaintiff does not allege facts regarding any unique visitors or page views—constitutes an injury to Plaintiff of $120,000 a month.  (¶ 46.)  Here too, Plaintiff cites no well-pled facts to support this conclusion.

In an attempt to establish concrete and particularized reputational harm, Plaintiff simply piles on additional conclusory injuries to support the notion that "[a]s a direct and proximate result of Defendant's infringing activities, Trademarkia has suffered irreparable injury to Trademarkia's business, reputation, and goodwill . . . for the following reasons [listed in ¶ 104]:"

- "[C]ustomers seeking for [sic] services offered by Trademarkia . . . have been misdirected to LegalZoom.com's homepage."  There are no factual allegations to support this statement, discussed in more detail below.

Cooley LLP
Attorneys At Law
Los Angeles

7.

Defendant LegalZoom's Motion to Dismiss
First Am. Cmplt.; Memo of P. & A.
3:18-cv-07274-MMC

- "[T]he threatened harm continues to this day, as when users go to LegalZoomTrademarkia.com . . . they see a message indicating that the domain may be available (e.g., implying available for purchase) and that the 'website coming soon!' [*sic*]."  Plaintiff does not add facts making it plausible that a generic parking page is causing injury and responsible for Plaintiff's decline.

- "LegalZoom continues to own the domain LegalZoomTrademarkia.com . . . and could at any time resume misdirecting traffic back to LegalZoom.com."  Again, there are no factual allegations that actual consumers were redirected, much less that consumer redirections could resume.

- "Trademarkia suffered lost revenue and market share, reduced asset value and increased advertising costs of unknown value because Trademarkia's brand has now been indistinguishably mixed with that of its arch-competitor LegalZoom."  There are no factual allegations to support this statement, discussed in more detail below.  Moreover, Plaintiff has filed numerous lawsuits blaming many other parties and other conduct for the decline in its business.[4]

Plaintiff does not allege prospective consumers could locate the Disputed Domain via an Internet search engine, any instances where LegalZoom actually promoted the Disputed Domain to any prospective consumers (either directly or through the LegalZoom Affiliate program), whether any prospective consumers knew of the Disputed Domain and used it to make a purchase of trademark

---

[4] Plaintiff's multiplicity of lawsuits against LegalZoom assign the same decline to other claims, see Request for Judicial Notice ("RJN") submitted herewith, Ex. 1: *Legalforce, Inc. v. Legalzoom.com, Inc.*, Case No. 19CV345030 (Santa Clara Sup. Ct.) (same threadbare allegation of injury based on the Disputed Domain); Ex. 2: *Legalforce, Inc. v. Legalzoom.com, Inc. et al.*, Case No. EC068877 (L.A. Sup. Ct.) (same, but assigning the cause to factors other than the Disputed Domain); Ex. 3: *Legalforce RAPC Worldwide, P.C. et al. v. Legalzoom.com, Inc. et al.*, Case No. 3:17-cv-07194-MMC (N.D. Cal.) (same).  Plaintiff has also sued other parties for causing the same decline.  *See* Request for Judicial Notice in Support of LegalZoom's Motion to Dismiss the Complaint, December 11, 2018, ECF 39, collecting other cases: *LegalForce RAPC Worldwide, P.C. et al. v. Trademark Engine LLC et al.*, Case No. 3:17-cv-07303-MMC, ECF 1, ¶ 78 ("[A]s a result of Trademark Engine's false and misleading advertisements, Plaintiffs have been injured, including but not limited to, decline in sales and market share, loss of goodwill, and additional losses and damages."); *Abhyanker et al. v. FileMy, LLC et al.*, Case No. 3:17-cv-07331-MMC, ECF 1, ¶ 84 (same, but blaming Legal-Sherpa.com); *Abhyanker et al v. Greenside et al.*, Case No. 3:17-cv-07354-MMC, ECF 1, ¶ 86 (same, but blaming Trademarks411.com); *LegalForce RAPC Worldwide P.C. et al. v. Swyers et al.*, Case No. 3:17-cv-07318-MMC, ECF 1, ¶ 90 (same, but blaming The Trademark Company); *LegalForce RAPC Worldwide P.C. et al. v. Demassa*, Case No. 3:18-cv-00043-MMC, ECF 1, ¶ 70 (same, but blaming TMExpress.com & UrgentTrademark.com); *LegalForce RAPC Worldwide P.C. et al. v. Cheie et al.*, Case No. 3:18-cv-00127-MMC, ECF 1, ¶ 85 (same, but blaming ACAEE); *LegalForce RAPC Worldwide P.C. et al. v. MyCorporation Business Services, Inc. et al.*, Case No. 3:18-cv-00142-MMC, ECF 1, ¶ 119 (same, but blaming MyCorporation).)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

8.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

1  watch and monitoring services on LegalZoom.com, or that there was any market confusion at all and

2  how it may have negatively impacted Plaintiff's revenues.

3  **III.  LEGAL STANDARDS ON A MOTION TO DISMISS.**

4      **A.  Federal Rules of Civil Procedure 8, 9 and 12(b)(6).**

5      Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing

6  that the pleader is entitled to relief."  With respect to fraud-based claims, Rule 9(b) requires a party to

7  "state with particularity the circumstances constituting fraud . . . ."  When a complaint fails to comply

8  with Rule 8(a) or Rule 9(b), Rule 12(b)(6) requires its dismissal for "failure to state a claim upon

9  which relief can be granted."

10      A complaint can fail to satisfy Rule 8(a) in multiple ways.  Most commonly, a complaint says

11  "too little," thus falling short of the "plausibility" standard required by Rule 8(a) and *Iqbal*.  *Knapp v.*

12  *Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  When

13  determining whether allegations are "plausible" a court should first "identify pleadings that, because

14  they are no more than conclusions, are not entitled to the assumption of truth," then assume the truth

15  of well-pled allegations and "determine whether they plausibly give rise to an entitlement to relief."

16  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  A court should

17  not "accept as true allegations that contradict exhibits attached to the complaint or matters properly

18  subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or

19  unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

20  Where a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short

21  of the line between possibility and plausibility of entitlement to relief."  *Eclectic Props.*, 751 F.3d at

22  996 (internal quotation marks omitted).

23      A complaint may also violate Rule 8(a) if it presents an undifferentiated mass of allegations,

24  making it "difficult or impossible for defendants to make informed responses to the plaintiff's

25  allegations."  *Jackson v. Cty. of Sacramento Dep't of Health & Human Servs.*, 2017 WL 1375211, at

26  *4 (E.D. Cal. Apr. 17, 2017).  "Rule 8(a) requires parties to make their pleadings straightforward, so

27  that judges and adverse parties need not try to fish a gold coin from a bucket of mud."  *U.S. ex rel.*

28  *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

9.

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC**

A complaint premised on allegations of fraud violates Rule 9(b) if the plaintiff fails to plead "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

### B.   Federal Rule of Civil Procedure 12(b)(1).

The Article III "case or controversy" requirement "ensure[s] that federal courts do not exceed their authority" by limiting subject matter jurisdiction to those plaintiffs that have standing. *Spokeo*, 136 S. Ct. at 1547.   To plead Article III standing, "the plaintiff must 'clearly . . . allege facts demonstrating'" that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547–48.   "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Where a plaintiff fails to plead Article III standing, its complaint is subject to dismissal under Rule 12(b)(1).   *See Smith v. Bank of Am., N.A.*, 679 F. App'x 549, 550 (9th Cir. 2017).   Where a defendant challenges a plaintiff's Article III standing based on the insufficiency of the allegations in the complaint, a court applies the same standard of review it applies on a motion to dismiss under Rule 12(b)(6).   *See Stevens v. Harper*, 213 F.R.D. 358, 370 (E.D. Cal. 2002) ("On a motion to dismiss for lack of standing, . . . the court is not obliged to accept allegations of future injury which are overly generalized, conclusory, or speculative" and "[i]n the absence of such specific factual allegations, the court may not assume that jurisdiction exists by 'embellishing otherwise deficient allegations of standing.'" (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 156 (1990))); *see also Colony Cove Props., LLC v. City of Carson,* 640 F.3d 948, 955 (9th Cir. 2011) (applying *Iqbal*'s standards to a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim).

## IV.   PLAINTIFF LACKS ARTICLE III STANDING TO PURSUE ANY OF ITS CLAIMS.

Article III standing is a threshold issue.   Thus, where the plaintiff lacks Article III standing, the Court need not delve into the merits of the case.   *See Spokeo*, 136 S. Ct. at 1547.   Here, as with its original Complaint, Plaintiff fails to plead facts showing that it has suffered (1) a "concrete and particularized" injury, or (2) that such injury is "fairly traceable" to LegalZoom's alleged conduct.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

10.

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC**

*See id.* at 1547-48.  Indeed, the allegations Plaintiff adds to the FAC either emphasize the deficiencies of Plaintiff's Article III standing or are irrelevant, vague, conclusory, and unintelligible, suggesting that Plaintiff has taken a "spaghetti" approach to pleading in that it has "heaved the entire contents of a pot against the wall in hopes that something would stick."  *See Indep. Towers of Wash. v. Washington*, 350 F. 3d 925, 929 (9th Cir. 2003).  Yet again, nothing sticks.

### A.      Plaintiff's Allegations of Reputational and Economic Injury Are Speculative.

Plaintiff alleges reputational and economic injury in conclusory statements that fail to identify any concrete and particularized harm.  "While [the plaintiff] need not plead injury with great detail, it must at least allege **some factual matter** supporting a reasonable inference that [the plaintiff] was injured by [the defendant]."  *C5 Med. Werks, LLC v. Ceramtec GmbH*, 2016 WL 4092955, at *3 (D. Colo. June 10, 2016) (quoting *Nature's Earth Prods., Inc. v. Planetwise Prods., Inc.*, 2010 WL 4384218, at *2–3 (S.D. Fla. Oct. 28, 2010)) (emphasis added).  The FAC here, however, lacks any factual matter.  *See NorthBay Healthcare Grp. v. Kaiser Found. Health Plan, Inc.,* 2018 WL 4096399, at *7 (N.D. Cal. Aug. 28, 2018) ("[N]aked assertions devoid of further factual enhancement are insufficient to state a claim."  (citation omitted)).

To illustrate: although the FAC contains the conclusory and absurd allegations that LegalZoom intended to mislead consumers (*e.g.*, ¶ 113), thereby allegedly diminishing Plaintiff's "brand value," "asset value," and "reputation" (*see, e.g.*, ¶¶ 31-34, 104), Plaintiff does not plead a concrete injury because the FAC does not (and cannot) allege that any consumer **actually encountered** the Disputed Domain.  Allegations of intent to mislead consumers do not alone establish Article III standing.  *See Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.*, 2018 WL 3122172, at *4 (D. Kan. June 26, 2018) (holding that plaintiff failed to allege concrete injury where complaint contained allegations of defendants' **intent** to "gain a competitive edge in the marketplace or to undermine business competitors," but failed to allege "that this result was **achieved**" (emphasis added)).

There is no allegation Internet search engines would show the Disputed Domain to users who searched for either party's mark, much less a plausible allegation that any consumer would type the URL of the Disputed Domain into their browser with the mistaken belief that it was in some way affiliated with Plaintiff.  There is no allegation regarding an actual advertisement featuring the

Cooley LLP
Attorneys At Law
Los Angeles

11.

**Defendant LegalZoom's Motion to Dismiss
First Am. Cmplt.; Memo of P. & A.
3:18-cv-07274-MMC**

Disputed Domain, nor any communication to or by a LegalZoom Affiliate program participant that included the Disputed Domain.  While Plaintiff alleges "it is likely that some users directly typed the characters 'www.legalforcetrademarkia.com' in the destination address bar" (¶ 83),[5] plaintiff does not allege that any consumer ever typed the Disputed Domain's URL in search of LegalForce.  Nor is such an allegation plausible.  "When people go shopping online, they don't start out by typing random URLs containing trademarked words hoping to get a lucky hit."  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1178 (9th Cir. 2010).  Thus, there is no reason to believe that anyone would accidentally type in the Disputed Domain when searching for Trademarkia, especially in light of the fact that **the Disputed Domain begins with LegalZoom**.  If a customer is looking for Trademarkia, it is nonsensical and implausible to posit that they would begin by typing in the name and trademark of a different company.  *See Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 778, 782–83 (9th Cir. 2018) (holding there was no Article III standing for an alleged violation of a statute prohibiting the printing of credit card expiration dates on receipts where there was no allegation that any third party saw the receipt at-issue).

Nor can Plaintiff articulate a non-speculative injury based on its fruitless attempts to market its intellectual property to LegalZoom (or anyone else).  (*See* ¶¶ 35-47).  Plaintiff posits that it would have licensed its TRADEMARKIA Mark to LegalZoom for $120,000 a month, but instead, LegalZoom used the mark for free by registering the Disputed Domain to LegalZoom's benefit and Plaintiff's loss.  (¶¶ 47, 49 ("Legal[Force] Trademarkia provided to LegalZoom a confidential offer of $120,000 to license the TRADEMARKIA Marks for the benefit of LegalZoom.").)  This richly optimistic view that LegalZoom would have licensed the TRADEMARKIA Marks for $120,000 a month demonstrates only a hypothetical pipe dream, and does not establish a concrete injury.  *See Spokeo*, 136 S. Ct. at 1548 (injury in fact may not be hypothetical).

---

[5] Plaintiff badly misconstrues an online "thought experiment" to reinforce its misguided theory that "12% to 29% of all traffic to e-commerce websites . . . comes from 'direct visits' based on word of mouth, memory, face-to-face referrals, and brand identity without using any search engine."  (¶ 83.) First, the website cited relies on the "unprecedented" conclusions of a study Groupon did of its own website.  (FAC, Ex. M.)  Second, the study concluded that, for a variety of reasons, direct visits are often improperly classified, and are often not actual direct visits.  (*Id.*)  When properly classified, direct visits account not for "up to" 29% of web traffic, but rather only 12%.  (*Id.* ("Direct visits dropped from 29% of visits to 12%.").)

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

12.

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC**

Moreover, Plaintiff misrepresents the exhibit it cites, which exposes the licensing offer did not exist as Plaintiff now describes. "A court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint." *KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1026-27, 1032-33 (N.D. Cal. 2009) (Chesney, J.) (rejecting allegations that contradict complaint's exhibits). Plaintiff offered to license two user interface alternatives, either $45,000 monthly (where Trademarkia was less prominent on the user interface) or $120,000 monthly (where Trademarkia was more prominent on the user interface), along with access to an audience based on Defendant's "1.5 million unique visitors and 3 million page views" (¶¶ 42-43; FAC, Exs. O-P), **not** use of the Disputed Domain for which Plaintiff does not allege facts supporting the existence of *any* visitors. Accordingly, the Court should reject as speculative allegations of injury resulting from an alleged failed offer for a licensing agreement covering other subject matter besides the use of the Disputed Domain.[6]

In short, Plaintiff's conclusion that it suffered reputational and economic harm relies on leaps of logic and speculation. Neither are adequate to plead Article III standing. *See Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1210 (11th Cir. 1991) ("[A] federal court should not speculate concerning the existence of standing or 'piece together support for the plaintiff.'" (quoting *Anderson v. City of Alpharetta*, 770 F.2d 1575, 1582 (11th Cir. 1985) (per curiam))).

### B. Plaintiff's Allegations Do Not Indicate that LegalZoom Is a Substantial Factor in Causing Plaintiff's Purported Economic Injury.

This Court did not mince words: **"Trademarkia has failed to allege any facts to support a finding that whatever loss of revenue it experienced beginning in April 2014 was the result of LegalZoom's use of the challenged domain name, as opposed to the cause or causes for the losses it allegedly experienced prior to that time."** (ECF 57 at 3 (emphasis added).) The FAC continues

---

[6] Moreover, even if the parties' "negotiations" had hinged on use of the TRADEMARKIA Mark, LegalZoom does not allege that use of the TRADEMARKIA Mark in the Disputed Domain in any way diminished Plaintiff's ability to use or otherwise license the mark to another. *See Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129-30 (W.D. Wash. 2012) (alleged harm too speculative where plaintiff did not allege the value of her property "actually diminished" as a result of defendant's conduct).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

13.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

to allege injury both before and after the supposed misconduct—fatally undermining any semblance of traceability to the alleged misconduct.

Injury is not traceable to a defendant's conduct where the injury begins **before the** challenged conduct.  *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 878 F.3d 1099, 1102 (8th Cir. 2018), *as corrected on denial of reh'g* (Apr. 3, 2018) (injury not fairly traceable where allegations of injury "pre-date[d] their supposed cause"); *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 169 (D.D.C. 2016) ("It is obvious that Defendants did not cause Plaintiffs' alleged harms when the sequence of events is examined: Plaintiffs' injuries occurred *before* [Defendants' challenged conduct] . . . . Plaintiffs have not alleged a concrete injury traceable to the Commission, and thus they lack standing."), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017); *S. Serv. Corp. v. Excel Bldg. Servs., Inc.*, 2007 WL 9700655, at *3 (D. Nev. Aug. 13, 2007) (finding causation insufficient where "Plaintiffs suffered harm well before Defendant made any allegedly improper threats").  Plaintiff alleges that his website ranking has declined **since 2012** (¶ 32), and Plaintiff graphically depicts that its audience began to decline no later than **early 2013** (FAC, Exs. T-U), both of which are well before the alleged use of the Disputed Domain in **April 2014** (¶ 31).  These rankings continued to decline, even after the alleged redirect ceased in June 2018.  (¶ 48; FAC, Exs. T-U.)  Moreover, even if there was some correlation between the alleged misconduct and decline in visitors, "correlation does not show causation."  *Kauai Kunana Dairy Inc. v. U.S.*, 2009 WL 4668744, at *5 (D. Haw. Dec. 8, 2009) (dismissing complaint for lack of causation).  As the Court has already determined, these allegations cannot establish traceability.

Plaintiff necessarily relied on building its correlation theory because it has failed to identify any customers who encountered the Disputed Domain, let alone any who purchased from LegalZoom as a result of the Disputed Domain.  Instructive in this regard is the Southern District of California's decision in *Two Jinn, Inc. v. Government Payment Service, Inc.*, 2010 WL 1329077 (S.D. Cal. Apr. 1, 2010).  The plaintiff there, a "licensed bail agent," contended that the defendant engaged in bail transactions without a valid license in violation of California law.  *Id.* at *1.  The plaintiff asserted an injury in fact "on the basis that '[s]ome of the diverted bail customers certainly would have purchased bail from [the plaintiff]" if not for the defendant's unfair competition.  *Id.* at *3.  The court found that

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

14.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

this was insufficient because the plaintiff had not identified "customers who would have purchased bail from sources other than" the defendant, or that customers "would have chosen the services of [the plaintiff] over the other various bail services." *Id.*

The FAC in this action suffers from the same defects. For instance, the FAC simply concludes that "Trademarkia suffered lost revenue and market share." (¶ 33.) This allegation does not establish Article III standing, however, because it fails to point to any consumer that selected LegalZoom over Plaintiff, or that would have withheld trade from Plaintiff because of the Disputed Domain. *Cf. Two Jinn, Inc.*, 2010 WL 1329077, at *3.[7] Likewise, the FAC's purported reliance on "expert" witness allegations regarding the "potential for linguistic confusion" between "LEGALZOOMTRADEMARKIA and LEGALFORCETRADEMARKIA," (¶ 82) is improper. "Conclusory allegations and speculation carry no additional weight" at the pleading stage merely because a plaintiff alleges the statements are made by a retained expert. *See DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001).[8]

In short, Plaintiff offers no well pled facts to show that any prospective consumers even knew of the Disputed Domain, much less used it to make a purchase on LegalZoom.com. This renders Plaintiff's allegations of economic injury too "attenuated" and "conjectural" to meet Article III's standing requirements. *See Two Jinn, Inc.*, 2010 WL 1329077, at *3. Accordingly, the FAC should be dismissed in its entirety.

## V.   THE FAC FAILS TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT (COUNTS I, II, IV).

Plaintiff asserts three separate claims for trademark infringement—two under the Lanham Act (15 U.S.C. §§ 1114, 1125(a)) and one under California common law—all based on LegalZoom's purported "use" of Plaintiff's marks "as a domain name to identify LegalZoom's website." (¶ 74.)

---

[7] Likewise insufficient to support standing is the allegation that one of Plaintiff's alleged employees "believes that Trademarkia has lost sales because of [customer] confusion" between "LEGALZOOM and LEGALFORCE TRADEMARKIA." (¶ 81.) An employee's unsupported speculation, cannot take the place of a fact. *See Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the *post-Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim.").

[8] It is improper to include reference to an expert opinion in a complaint. *See DeMarco*, 149 F. Supp. 2d at 1219–22 (striking expert opinion offered in support of an amended complaint because it would force the court "to confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage").

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

15.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

None of these claims succeeds, however, because the allegations in the complaint "are buried beneath innumerable pages of rambling irrelevancies." *Jackson*, 2017 WL 1375211, at *4 (citation omitted). Moreover, Plaintiff did not sufficiently plead a likelihood of confusion. Finally, Plaintiff's claim under Section 1125(a) of the Lanham Act fails due to the FAC's failure to satisfy Rule 9(b) and plead sufficient facts to establish statutory standing.

**A.      Plaintiff's Claims for Trademark Infringement (Counts I, II, and IV) Fail Because Plaintiff Did Not Sufficiently Plead a Likelihood of Confusion.**

Plaintiff's three trademark infringement claims ask whether LegalZoom's alleged use of the mark on competing or related goods creates a likelihood of consumer confusion. *See Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 407 (9th Cir. 2018). "The test for likelihood of confusion is whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (internal quotation marks and citation omitted); *see Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("[T]rademark infringement protects only against mistaken **purchasing decisions** and not against confusion generally." (citation omitted)). "The *Network Automation* Court also issued a reminder that . . . as the novelty of the Internet evaporates and online commerce becomes commonplace, consumers have grown more sophisticated." *Nordstrom, Inc. v. 7525419 Canada Inc.*, 2012 WL 12507605, at *5 (W.D. Wash. Dec. 27, 2012) (internal quotation marks and citations omitted). Thus, courts recognize that consumers "fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary." *Id.* (citation omitted); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011) ("We determined that it was unlikely that a reasonably prudent consumer would be confused into believing that a domain name that included a product name would necessarily have a formal affiliation with the maker of the product, as '[c]onsumers who use the internet for shopping are generally quite sophisticated about such matters.'" (quoting *Toyota*, 610 F.3d at 1178)).

The FAC advances two theories to support likelihood of confusion: (1) that LegalZoom's use of the Disputed Domain is likely to result in consumer confusion at the point of purchase, and (2) that the existence of the Disputed Domain is likely to cause "initial interest confusion." Neither succeeds.

16.

1.    **LegalZoom's Purported Redirection from the Disputed Domain to LegalZoom.com Is Not Likely to Cause Confusion.**

Plaintiff alleges LegalZoom began "diverting traffic" from the Disputed Domain to LegalZoom.com in 2014 (¶ 47), which was likely to cause confusion "as to the origin of LegalZoom's goods and services and/or as to the sponsorship by, affiliation with, and/or connection to Trademarkia" (¶ 93; *see also, e.g.*, ¶ 83 ("Consumers saw LegalZoom's homepage LegalZoom.com when accessing LegalZoomTrademarkia.com . . . . LegalZoom's light-and-dark-blue logo, . . . was prominently shown on the top of its homepage."), ¶ 88 ("LegalZoom's homepage or the various landing pages of the redirection . . . has no disclaimer which clearly labels that the website is not the website of Trademarkia, or that the website has no association with Trademarkia, or that Trademarkia is not acquired by or not part of LegalZoom."); *accord* ¶¶ 98, 127).  Indeed, the Ninth Circuit previously considered and rejected this argument in *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930 (9th Cir. 2015).[9]

In *Multi Time Machine*, defendant Amazon was accused of presenting shoppers searching for one trademark with results clearly associated with a different brand.  804 F.3d at 936 ("[W]hen a customer searches for MTM Special Ops watches on Amazon.com, the search results page displays . . . numerous watches manufactured by MTM's competitors and offered for sale by Amazon, without explicitly informing the customer that Amazon does not carry MTM watches.").  The plaintiff "argue[d] that in order to eliminate the likelihood of confusion, Amazon must change its search results page so that it explains to customers that it does not offer MTM watches for sale before suggesting alternative watches to the customer." *Id.* at 938.  The Ninth Circuit disagreed.  The court noted "[t]he search results page makes clear to anyone who can read English that Amazon carries only the brands that are clearly and explicitly listed on the web page.  The search results page is unambiguous—. . . no reasonable trier of fact could conclude that Amazon's search results page would likely confuse a

---

[9] Although courts in the Ninth Circuit sometimes look to the eight-factor test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) to assess likelihood of confusion in *traditional* trademark infringement cases, the Ninth Circuit has recognized that the *Sleekcraft* factors are not well-suited for cases, like this one, involving non-traditional uses of trademarks on the Internet when the plaintiff's theory of infringement does not align with the *Sleekcraft* factors.  *See, e.g.*, *Multi Time Machine*, 804 F.3d at 936-37; *Network Automation*, 638 F.3d at 1152 (9th Cir. 2011).

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC**

1    reasonably prudent consumer accustomed to shopping online as to the source of the goods being

2    offered." *Id.*; *see also id.* at 939 ("[I]t is highly unlikely that a reasonably prudent consumer

3    accustomed to shopping online would be confused as to the source of the goods offered for sale on

4    Amazon's web page" where "each product listed for sale is clearly labeled with the product's name

5    and manufacturer and a photograph, and no product is labeled with MTM's mark.").

6          Similar to the search results at issue in *Multi Time Machine*, here the website purportedly linked

7    to the Disputed Domain is alleged to be unambiguously associated with LegalZoom only.  (¶ 83.)

8    Thus, to the extent a customer is looking for Plaintiff at the Disputed Domain, he knows he has been

9    presented with an alternative option upon viewing the LegalZoom homepage.  In fact, because the

10   hypothetical visitor of the Disputed Domain would not have been looking solely for "Trademarkia,"

11   but rather "LegalZoomTrademarkia.com"—a term that includes LegalZoom's trademark— Plaintiff

12   here is even further from having a meritorious claim than the unsuccessful plaintiff in *Multi Time*

13   *Machine*.

14         Plaintiff's allegations that LegalZoom contracted with third parties in its Affiliate program to

15   promote its brand does not improve Plaintiff's argument.  (*See generally*, ¶¶ 19-28, *see also*, ¶ 19

16   ("LegalZoom paid a commission to Publishers that advertised a hyperlink back to the Disputed

17   Domain."); ¶ 27 ("[LegalZoom] presumptively caused harm by actively recruiting and listing the

18   Disputed Domain on the Pepperjam advertising network.").)  First, plaintiff does not allege that any

19   person or entity actually promoted the Disputed Domain in connection with the Affiliate program (or

20   any other program).[10]  Second, Plaintiff does not allege that any consumer ever visited the Disputed

21   Domain, as a result of the Affiliate program.  Third, even if a potential consumer did visit the Disputed

22   Domain as a result of the Affiliate program, the Disputed Domain allegedly redirected the consumer

23   immediately to LegalZoom's home page, where they were immediately confronted with LegalZoom's

24

25

26

27

28

---

[10] Plaintiff cites Exhibit B to support that LegalZoom "actually advertised and promoted the Disputed Domain" in its Affiliate program.  (¶ 92).  Exhibit B supports no such notion.  Nor is it reasonable to infer that, just because LegalZoom is capable of tracking hypothetical redirections from the Disputed Domain, a consumer ever actually accessed the Disputed Domain.

marks and branding.[11]  (¶ 83).  That the Affiliate program "confus[ed] the public" and "diminish[ed] the value of the TRADEMARKIA Marks" (¶ 25) is simply not plausible.

Just as "the clear labeling Amazon uses on its search results page" meant that "no reasonable trier of fact could conclude that Amazon's search results page would likely confuse a reasonably prudent consumer accustomed to shopping online as to the source of the goods being offered," *Multi Time Machine*, 804 F.3d at at 938, Plaintiff does not plead facts that would plausibly establish that any reasonably prudent consumer who was allegedly redirected from LegalZoomTrademarkia.com to LegalZoom.com could be confused as to the source of the services offered on the unambiguous landing page.[12]  This theory of infringement fares no better than a frivolous argument that mere domain name registration amounts to trademark infringement.[13]

### 2.   The Allegations Regarding "Initial Interest Confusion" Are Not Plausible.

The FAC also makes passing reference to the often-criticized[14] doctrine of initial interest confusion as an alternate theory supporting its trademark infringement claims.  (¶ 93.)  Plaintiff's allegations, however, fail to align this case with those narrow circumstances where the Ninth Circuit has previously recognized this doctrine as the basis for actionable trademark confusion apart from the context of purchasing decisions.

"Initial interest confusion occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a

---

[11] Plaintiff does not allege that any person or entity associated with the Affiliate program promoted the Disputed Domain's URL address; rather, Plaintiff alleges "LegalZoom paid a commission to Publishers that advertised a hyperlink back to the Disputed Domain."  (¶ 19.)

[12] Plaintiff also alleges "LegalZoom deliberately redirected its website LegalZoomTrademarkia.com to its home page **and included false claims of its connection to the Trademarkia.com website**."  (¶ 103 (emphasis added).)  Nowhere in the Complaint, however, does Plaintiff identify the content of these "false claims" that purportedly appeared on LegalZoom's homepage.  Accordingly, the Court should disregard this conclusory allegation.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. 2007) ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

[13] "Registration of a domain name **without more** does not constitute service mark or trademark infringement."  *GoPets, Ltd. v. Hise*, 657 F.3d 1024, 1035 (9th Cir. 2011) (emphasis added).

[14] *See*, *e.g.*, Michael Grynberg, Trademark Litigation As Consumer Conflict, 83 N.Y.U. L. Rev. 60, 86 (2008) (noting cases that expanded the "initial interest confusion doctrine into Internet cases in which the case for any consumer harm is doubtful" have been criticized); Glynn S. Lunney, Jr., Trademarks and the Internet: The United States' Experience, 97 Trademark Rep. 931, 949–50 (2007) (explaining that the justification for the doctrine does not exist online due to the minimal costs involved with online searching).

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

19.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC

1    result of the confusion." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir.

2    2002) (internal quotation marks and citation omitted).  Here, the FAC alleges that LegalZoom's

3    purported use of the Disputed Domain "is likely to cause initial interest confusion of consumers who

4    are in fact searching solely for Trademarkia and/or Trademarkia registered trademarks." (¶ 93.)  This

5    conclusory allegation, however, suffers from a number of flaws, including: (1) the complete absence

6    of factual allegations suggesting any consumer would have found the Disputed Domain; (2) the

7    Disputed Domain does not fall within the narrow set of domains that courts have found suggest active

8    affiliation with a plaintiff; and (3) the unprecedented expansion necessary to subsume this alleged fact

9    pattern within the narrow "initial interest confusion" doctrine.

10          **a.    Plaintiff Alleges No Facts to Suggest that a Consumer Searching for Trademarkia Would Have Found the Disputed Domain.**

12          The FAC contains no allegations that LegalZoom promoted the Disputed Domain "in a manner

13   calculated to capture initial consumer attention."  *See Interstellar Starship*, 304 F.3d at 941 (internal

14   quotation marks and citation omitted).

15          In the context of the Internet, the Ninth Circuit has found that use of trademarks in metatags[15]

16   and keyword search terms are means of capturing initial consumer attention because they allow the

17   consumer to use search engines, such as Google or Bing, to search for websites based on keywords

18   and phrases.  *See id.* at 944-45 (discussing case finding initial interest confusion for use of trademarks

19   in metatags); *Network Automation*, 638 F.3d at 1147 (discussing case finding potential for initial

20   interest confusion based on unlabeled banner ads).

21          Here, however, Plaintiff does not allege that LegalZoom used any of Plaintiff's trademarks as

22   keyword search terms or metatags such that a consumer searching for Trademarkia would be directed

23   to the Disputed Domain.  Indeed, the FAC does not allege that the Disputed Domain was accessible

24   to consumers via any Internet search engine, nor does the FAC plausibly allege that a consumer could

25   have guessed or accidentally typed in the Disputed Domain in a browser.  *See supra* Section IV.A.

26   But even an incorrect guess does not necessarily result in initial interest confusion.  *See Interstellar*

---

[15] "Metatagging is inserting words into the code of a web page that help determine how it appears in search results."  *GoPets*, 657 F.3d at 1028.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

20.

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC**

*Starship*, 304 F.3d at 945 ("Although a consumer might incorrectly guess that United Van Lines would be found at www.united.com, such an erroneous guess does not generally amount to a likelihood of initial interest confusion." (internal citation and parenthetical omitted)).

In short, Plaintiff has alleged no facts to support its conclusory allegations that LegalZoom "use[d] [] the [Disputed Domain] to misdirect customers searching for LegalForce or Trademarkia back to their own website" (¶ 29) or that "a consumer searching for LegalForceTrademarkia would end up getting onto LegalZoomTrademarkia.com website" (¶ 86). This alone distinguishes this case from those limited instances where the Ninth Circuit recognized the possibility of basing a trademark claim on "initial interest confusion."

### b. The Domain Name Does Not Fall Within the Narrow Set of Domains that Suggest Active Affiliation with the Plaintiff.

"Outside the special case of trademark.com, or domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page—if then." *Toyota*, 610 F.3d at 1179. Here, however, the FAC does not allege that LegalZoom registered "trademarkia.com." *Cf. id.* at 1177-78 ("When a domain name consists **only** of the trademark followed by .com, or some other suffix like .org or .net, it will typically suggest sponsorship or endorsement by the trademark holder . . . [but] [c]onsumers . . . won't be fooled . . . just because the string of letters making up [a] trademark **appears** in [a] domain." (emphasis added)). Nor does the FAC allege that LegalZoom registered "official-trademarkia-site.com" or "we-are-trademarkia.com," which may suggest active affiliation with Plaintiff. *Cf. id.* at 1179 (noting that "domains like official-trademark-site.com or we-are-trademark.com affirmatively suggest sponsorship or endorsement by the trademark holder"). Absent such facts, Plaintiff cannot support its conclusory allegation that the Disputed Domain is "likely to cause confusion, mistake and deception . . . as to the origin of LegalZoom's goods and services and/or as to the sponsorship by, affiliation with, and/or connection to Trademarkia." (¶ 93; *see also* ¶¶ 98, 127.)

Cooley LLP
Attorneys At Law
Los Angeles

21.

Defendant LegalZoom's Motion to Dismiss
First Am. Cmplt.; Memo of P. & A.
3:18-cv-07274-MMC

1

2

> **c.     The FAC Seeks Unprecedented Expansion of the "Initial Interest Confusion" Doctrine.**

3

4

Courts in this circuit considering "initial interest confusion" in recent years have narrowed or limited its application, or otherwise found reasons not to apply the doctrine to support a finding of trademark infringement. *See, e.g., Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1123 (D. Nev. 2013) (rejecting expansion of initial interest doctrine to defeat application of first sale doctrine, and noting that the complaint failed to allege that defendant "purchased search engine keywords incorporating [plaintiff's] marks, or that [defendant] used website metadata incorporating [plaintiff's] marks—conduct at the heart of initial interest confusion on the internet"); *Karl Storz Imaging, Inc. v. Pointe Conception Med., Inc.*, 2011 WL 13195980, at \*20 (C.D. Cal. Aug. 1, 2011) (finding likelihood of initial interest confusion low given the degree of care and sophistication of the consumers, and the labeling and surrounding context of the advertisements).

5

6

7

8

9

10

11

12

Here, Plaintiff asks this Court to go in the opposite direction and expand "initial interest confusion" to a scenario where it has not been applied—*i.e.*, to a domain name containing two trademarks (only one of which is owned by Plaintiff) that is not alleged to have been promoted in any way, but which allegedly redirected any hypothetical visitors who stumbled upon the domain to LegalZoom's non-infringing domain and related homepage, which in turn contained no reference to Plaintiff or any of Plaintiff's trademarks. Such proposed expansion should be rejected. *See Network Automation*, 638 F.3d at 1148 (rejecting expansion of the initial interest confusion doctrine).

13

14

15

16

17

18

19

> **B.     Plaintiff's Claims for Trademark Infringement (Counts I, II, and IV) Also Fail Because Unjust Enrichment Is Not a Valid Form of Injury, Nor Is a Claim for Unjust Enrichment Pled.**

20

21

In connection with invoking the contract-based concept of "expectation damages," Plaintiff alleges LegalZoom was unjustly enriched pursuant to a quasi-contract theory because LegalZoom rejected Plaintiff's offer to license its intellectual property, and then purportedly used Plaintiff's intellectual property anyway.  (¶¶ 35-46, 49.)  Even putting aside the fact that there is no separate claim for breach of contract, unjust enrichment, or "quasi-contract" in this case, the FAC does not allege facts such that an unjust enrichment based on a quasi-contract theory of restitution is plausible.

22

23

24

25

26

27

28

Cooley LLP
ATTORNEYS AT LAW
LOS ANGELES

22.

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC**

A quasi-contract theory of restitution requires Plaintiff to allege (1) "receipt of a benefit" and (2) "unjust retention of the benefit at the expense of another." *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 852 (N.D. Cal. 2012). A claim for unjust enrichment that "fails to allege that [Plaintiff] obtained a benefit" necessarily fails. *Id.* (dismissing where complaint "fail[ed] to explain how Apple [had] been unjustly enriched"). *TV One LLC v. BET Networks*, is particularly instructive. 2012 WL 13012674 (C.D. Cal. 2012). There, plaintiff claimed defendant "benefitted from the unlawful use [of its] 2010 TV One Program," a television program belonging to plaintiff and which defendant broadcasted without plaintiff's permission. *Id.* at *2, 13. In dismissing the claim, the court explained the allegations were "nothing but labels and conclusions" as defendant "fail[ed] to provide any **factual support** for this assertion. Nowhere [was] it alleged **how** any defendant benefitted from broadcasting the program." *Id.* (emphasis added).

Similarly, here, Plaintiff fails to allege facts that make plausible the bare allegations that LegalZoom benefitted in any way from its alleged use of the Disputed Domain, or how retention of such a benefit injured Plaintiff. Because it failed to allege both elements—and there is not even an effort to state a separate quasi-contract claim—this theory is doomed.

### C.  Plaintiff Failed to Satisfy Rule 9(b) with Respect to Its Claim for Trademark Infringement Under 15 U.S.C. § 1125(a) (Count II).

Plaintiff's false association claim is grounded in fraud. (*See, e.g.*, ¶ 112 ("Defendant's actions . . . are calculated to deceive consumers."); ¶ 113 ("LegalZoom intentionally misleads consumers.").) As such, it must comply with the requirements of Rule 9(b) for pleading fraud with particularity. *See Smoothreads, Inc. v. Addventure Prods., Inc.*, 2009 WL 10671911, at *7 (S.D. Cal. Sept. 29, 2009) ("A claim [under 15 U.S.C. § 1125(a) of Lanham Act] is not exempt from the strictures of [Rule 9(b)]."). Yet, as discussed in Section IV.A., above, Plaintiff failed to plead any specifics regarding when, where, why, and how the Disputed Domain was included in advertisements or other communications, or any other circumstances under which relevant customers might become aware of the Disputed Domain.

Cooley LLP
Attorneys At Law
Los Angeles

23.

Defendant LegalZoom's Motion to Dismiss
First Am. Cmplt.; Memo of P. & A.
3:18-cv-07274-MMC

1

**D.     Plaintiff Lacks Statutory Standing to Pursue Its Claims for Trademark Infringement Under 15 U.S.C. § 1125(a) (Count II).**

2

3       Section 1125(a) of the Lanham Act "creates two distinct bases of liability: false association

4   [which Plaintiff has called "trademark infringement" in its FAC], § 1125(a)(1)(A), and false

5   advertising, § 1125(a)(1)(B)."  *Lexmark*, 572 U.S. at 122.  Section 1125(a) provides standing to

6   institute a civil action under its provisions to "any person who believes that he or she is or is likely to

7   be damaged by" alleged false association or false advertising.  15 U.S.C. § 1125(a).  Accordingly, in

8   *Lexmark*, the Supreme Court held that "a plaintiff suing under § 1125(a) ordinarily must show

9   economic or reputational injury flowing directly from the deception wrought by the defendant's

10  advertising; **and that that occurs when deception of consumers causes them to withhold trade**

11  **from the plaintiff**."  *Lexmark*, 572 U.S. at 133 (emphasis added)).

12      Although *Lexmark* concerned only false advertising claims, multiple courts have assumed that

13  its proximate causation requirements apply equally to false association claims.  *See 578539 B.C., Ltd.*

14  *v. Kortz*, 2014 WL 12572679, at *6 n.54 (C.D. Cal. Oct. 16, 2014) ("Although few courts have had

15  the opportunity to consider whether *Lexmark's* discussion of statutory standing applies equally to

16  § 43(a) [*i.e.*, 15 U.S.C. § 1125(a)] false association claims, some have assumed that it does." (citing

17  *Lundgren v. AmeriStar Credit Sols., Inc.*, 40 F. Supp. 3d 543, 551 n.4 (W.D. Pa. 2014); *Ahmed v.*

18  *Hosting.com*, 28 F. Supp. 3d 82, 90 (D. Mass. 2014))).  A plaintiff's standing for a "false association"

19  claim is based on the exact same statutory language as the basis for standing for a "false advertising"

20  claim.  *See* 15 U.S.C. § 1125(a); *see also Lundgren*, 40 F. Supp. 3d at 551 n.4 (noting that "the Court

21  of Appeals for the Third Circuit previously held that, for purposes of the standing analysis, there was

22  no distinction between the two types of actions" under 15 U.S.C. § 1125(a)).

23      Here, Plaintiff alleges that LegalZoom violated Section 1125(a)'s prohibition on false

24  association, and as a result, Plaintiff "suffered irreparable injury to [its] business, reputation, and

25  goodwill." (¶ 104.)  Though Plaintiff embellishes on this point with a short laundry list of other equally

26  conclusory manifestations of harm, it does not allege plausible facts to support these conclusions.  For

27  example, Plaintiff does not allege that the Disputed Domain was accessible to consumers via any

28  Internet search engine.  Nor does Plaintiff make any plausible allegations that a consumer might

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

24.

**DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC**

accidentally type in the Disputed Domain hoping to find Trademarkia.  Indeed, Plaintiff does not allege that a single consumer ever visited the Disputed Domain, much less that such consumer ultimately purchased services from LegalZoom thinking that LegalZoom was in some way affiliated with Plaintiff.  In short, Plaintiff has not pled that LegalZoom's "use" of the Disputed Domain caused consumers to "withhold trade from the [P]laintiff."  *See Lexmark*, 572 U.S. at 133.

Moreover, Plaintiff's allegations attributing its economic decline to LegalZoom's purported use of the Disputed Domain are belied by Plaintiff's allegations in other lawsuits filed within the past year.  For instance, Plaintiff has blamed a whole host of its alleged competitors for its loss of revenue and goodwill, based on arguments ranging from antitrust violations to false advertising to unauthorized practice of law.  (*See* ECF 38 at 5-6.)  Speculating as to the basis for Plaintiff's harm does not state a claim.  *See Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Thus, Plaintiff's failure to plead statutory standing is another separate basis to dismiss Count II.

**VI.    CONCLUSION**

For the foregoing reasons, the FAC should be dismissed with prejudice.

Dated:        April 4, 2019                      COOLEY LLP

*/s/ John Paul Oleksiuk*
John Paul Oleksiuk
Attorneys for Defendant LEGALZOOM.COM, INC.

COOLEY LLP
ATTORNEYS AT LAW
LOS ANGELES

25.

DEFENDANT LEGALZOOM'S MOTION TO DISMISS
FIRST AM. CMPLT.; MEMO OF P. & A.
3:18-CV-07274-MMC