IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGALFORCE, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>LEGALZOOM.COM, INC.,<br><br>    Defendant. | Case No. 18-cv-07274-MMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 59 |

Before the Court is defendant LegalZoom.com, Inc.'s ("LegalZoom") Motion, filed April 4, 2019, "to Dismiss the First Amended Complaint." Plaintiff LegalForce, Inc. ("Trademarkia")[1] has filed opposition, to which LegalZoom has replied.[2] Having read and considered the parties' respective written submission, the Court rules as follows.[3]

In the First Amended Complaint ("FAC"), Trademarkia alleges it operates Trademarkia.com, a website providing "trademark watch and monitoring services," and that it has registered the marks "Trademarkia" and "LegalForceTrademarkia" (see FAC ¶¶ 3-4, 9, 16); Trademarkia alleges that LegalZoom, a "competitor[ ]," operates

---

    [1]Plaintiff, both in its First Amended Complaint and its opposition to the instant motion, refers to itself as "Trademarkia," a mark it states it uses to conduct business.

    [2]Trademarkia's request for leave to file a surreply is hereby DENIED, as, contrary to Trademarkia's assertion, LegalZoom did not raise a new argument in its reply, and, in any event, Trademarkia's proposed surreply is wholly based on factual assertions not set forth in the FAC. See Monzon v. Southern Wine & Spirits, 834 F. Supp. 2d 934, 941 (N.D. Cal. 2011) (holding court may not consider "new facts alleged in a plaintiff's opposition to a defendant's motion to dismiss," where motion challenges complaint on its face).

    [3]By order filed May 7, 2019, the Court took the matter under submission.

1  LegalZoom.com, a website on which LegalZoom likewise provides "trademark watch and
2  monitoring services" (see FAC ¶ 4). According to Trademarkia, LegalZoom purchased
3  the domain name "LegalZoomTrademarkia.com" in 2012 (see FAC ¶ 47) and, from April
4  2014 through April 2018, "divert[ed] traffic from LegalZoomTrademarkia.com to its
5  website LegalZoom.com" (see FAC ¶¶ 47-48). Based on the above allegations,
6  Trademarkia asserts four Claims for Relief, the First, Second, and Fourth based on
7  trademark infringement, and the Third based on cyberpiracy.

8  Trademarkia's initial complaint, which asserted the same four claims as those
9  asserted in the FAC, was dismissed for lack of standing. Specifically, the Court found
10 Trademarkia failed to plead facts to support a finding that it had suffered some
11 threatened or actual injury as a result of LegalZoom's use of the domain name
12 LegalZoomTrademarkia.com. (See Order, filed March 13, 2019.)

13 By the instant motion, LegalZoom argues Trademarkia has not cured the
14 deficiency identified in the Court's prior order, and, alternatively, that Trademarkia's
15 trademark infringement claims are subject to dismissal for failure to state a claim upon
16 which relief can be granted. The Court considers LegalZoom's arguments in turn.

**A. Standing**

18 A plaintiff has standing "when the plaintiff himself has suffered some threatened or
19 actual injury resulting from the putatively illegal action." See Warth v. Seldin, 422 U.S.
20 490, 499 (1975) (internal quotation and citation omitted).

21 As noted, Trademarkia, in its initial complaint, did not allege facts to support
22 standing. In its response to the instant motion, Trademarkia argues it has cured the
23 above-noted deficiency by adding factual allegations pertaining to the parties' "trademark
24 licensing negotiations over the Trademarkia Marks." (See FAC ¶ 35.) In particular,
25 Trademarkia now alleges it offered LegalZoom, in return for $120,000 per month, a
26 license to use the mark Trademarkia on a website to be called "LegalZoom Trademarkia"
27 (see FAC ¶¶ 42-44), that LegalZoom, "[t]hinking that Trademarkia's licensing
28 requirements at $120,000 were too high," ended the licensing negotiations in December

2

2011 (see FAC ¶ 46), that six months later LegalZoom purchased the domain name LegalZoomTrademarkia.com without payment to Trademarkia (see FAC ¶¶ 46-47), and that LegalZoom thereafter used said domain (see FAC ¶ 47).

Damages in a trademark infringement action can be based on a "hypothetical royalty rate." See Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1344-45 (7th Cir. 1994); see also Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc., 597 F.2d 71, 76 (5th Cir. 1979) (holding damage award in trademark infringement case properly based on amount defendant would have paid to obtain license to use plaintiff's marks). Although LegalZoom argues the FAC does not include "well-pled facts" to support a finding that Trademarkia is entitled to a licensing fee of $120,000 a month (see Def.'s Mot. at 7:17-19; see also id. at 12:21-22 (arguing $120,000 licensing fee is "only a hypothetical pipe dream")), the issue at this stage is whether Trademarkia has sufficiently pleaded it incurred an "injury-in-fact," see Maya v. Centex Corp., 658 F.3d 1060, 1069 (9th Cir. 2011), not whether it in fact incurred such harm or whether it is in fact entitled to an award in the amount it seeks, see id. at 1068 (holding "threshold question of whether [a] plaintiff has standing . . . is distinct from the merits of his claim").

In light of the allegations set forth above, the Court finds Trademarkia has sufficiently alleged its standing to pursue its claims. See, e.g., J & J Sports Productions, Inc., 2013 WL 5347547, at *4 (E.D. Cal. September 23, 2013) (holding plaintiff sufficiently alleged its standing to assert conversion claim, based on allegation defendant used plaintiff's property without payment of "commercial licensing fee").

Accordingly, the FAC is not subject to dismissal for failure to sufficiently allege standing.

**B. Failure to State a Claim**

LegalZoom argues the First, Second, and Fourth Claims for Relief, all of which are based on the allegation that LegalZoom engaged in trademark infringement when it used

//
//

3

LegalZoomTrademarkia.com, are subject to dismissal for failure to state a claim.[4]

### 1. Likelihood of Confusion

LegalZoom argues the FAC does not include factual allegations sufficient to support a finding that LegalZoom's asserted use of LegalZoomTrademarkia.com has created any likelihood of confusion.

"The core element of trademark infringement is whether the defendant's conduct is likely to confuse customers about the source of the products." Multi Time Machine, Inc. v. Amazon.com, Inc., 804 F.3d 930, 933 (9th Cir. 2015) (internal quotation and citation omitted). Here, Trademarkia relies on a theory of "initial interest confusion," see id. at 936, specifically, "confusion that creates initial interest in a competitor's product," but is "dispelled before an actual sale occurs," see id. at 936 n.2 (noting "initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement") (internal quotations and citations omitted).[5]

LegalZoom argues the likelihood of any such confusion has not been shown, as there is no allegation that any potential customer ever was exposed to the challenged domain name. In particular, LegalZoom argues, there are no factual allegations to support a finding that LegalZoom promoted LegalZoomTrademarkia.com or that any customer visited such domain. As set forth below, the Court disagrees.

Trademarkia now alleges that LegalZoom utilized an "Affiliate program" through which LegalZoom advertised the services provided at LegalZoomTrademarkia.com. (See FAC ¶¶ 19, 25). In particular, Trademarkia alleges, LegalZoom has a number of "affiliates," namely, entities and individuals who have "blogs," "community newsletters," or other types of websites (see FAC ¶ 19), who "promote" on those sites "LegalZoom

---

[4]LegalZoom does not contend the Third Claim for Relief, by which Trademarkia alleges a claim for cyberpiracy, is subject to dismissal for failure to state a claim.

[5]In this instance, it would appear unlikely that the allegedly "divert[ed]" customers (see FAC ¶ 47) would, after viewing LegalZoom's website, believe LegalZoom.com is sponsored by or otherwise associated with Trademarkia. The FAC does not allege, for example, that LegalZoom's website makes any reference to Trademarkia or its products.

4

1    products using banner ads or text links" directly connecting to LegalZoom.com (see FAC
2    ¶¶ 19, 25), and who receive a "commission" from LegalZoom "[e]ach time a visitor clicks
3    on a LegalZoom link on [an affiliate's] website and completes a purchase" (see FAC Ex.
4    H).

5    Trademarkia further alleges that "millions of visitors" have viewed affiliate websites
6    that displayed such advertisements (see FAC ¶ 25), and that "[m]any of [the affiliates]
7    have visitors who know of the Trademarkia brand" (see FAC ¶ 23), in that "Trademarkia
8    Marks" have been "widely recognized by the general public . . . as a trusted leading news
9    source for any new trademarks filed by celebrities, sports teams, musicians, politicians,
10   or big corporations" (see FAC ¶ 54).

11   Given the above allegations, a reasonable inference can be drawn that a visitor to
12   an affiliate's website, upon viewing an advertisement for LegalZoomTrademarkia.com,
13   would likely believe such advertisement was for services associated with Trademarkia.
14   See, e.g., San Diego Comic Convention v. Dan Farr Productions, 336 F. Supp. 2d 1191,
15   1201 (S.D. Cal. 2018) (holding, where plaintiff and defendant operated competing events,
16   defendant created "consumer confusion" when it included plaintiff's trademark in domain
17   name defendant used to "direct[ ], steer[ ], and point[ ]" customers to defendant's event).

18   Accordingly, Trademarkia's infringement claims are not subject to dismissal for
19   failure to sufficiently allege a likelihood of confusion.

20   **2. Award Based on Unjust Enrichment**

21   LegalZoom next argues Trademarkia has failed to plead facts to support a finding
22   that, if LegalZoom is found liable for trademark infringement, Trademarkia would be
23   entitled to an award based on a theory of unjust enrichment.

24   Upon a showing of trademark infringement, a plaintiff, "subject to equitable
25   principles," may seek an award of damages as a remedy. See Lindy Pen Co. v. Bic Pen
26   Corp., 982 F.2d 1400, 1407 (9th Cir. 1993). "Because proof of actual damage is often
27   difficult, a court may award damages based on [a] defendant's profits on the theory of
28   unjust enrichment." Id. Where a plaintiff seeks such a remedy, "[t]he plaintiff has only

the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty," and, if it meets such burden, the defendant "bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead." Id. at 1408.

Here, Trademarkia alleges it is entitled to "all profits derived by LegalZoom from its illegal acts complained of [in the FAC]" (see FAC, Req. for Relief ¶ H), a claim LegalZoom challenges. In particular, LegalZoom contends Trademarkia has failed to allege any facts to support a finding that LegalZoom received any benefit from its use of LegalZoomTrademarkia.com or that any benefit it may have received caused harm to Trademarkia, and, consequently, Trademarkia is not entitled to seek an award based on a theory of unjust enrichment.[6] The Court, however, finds the factual allegations set forth above are sufficient to support a finding that LegalZoom's affiliates, at LegalZoom's request, published advertisements for LegalZoomTrademarkia.com, that some viewers of those advertisements were familiar with Trademarkia and clicked on them believing LegalZoomTrademarkia.com was associated with Trademarkia, that those viewers were then redirected to LegalZoom.com, and that some number of them then completed purchases from LegalZoom.com.

Accordingly, Trademarkia's request for an award in the form of LegalZoom's profits, based on a theory of unjust enrichment, is not subject to dismissal.

**C. Rule 9(b)**

LegalZoom argues that the Second Claim for Relief, which alleges trademark infringement in violation of 15 U.S.C. § 1125(a), is subject to the heightened pleading

---

[6] Although two of Trademarkia's trademark infringement claims are brought under federal statutes (see FAC at 21:10-11, 26:26-27), LegalZoom, in support of the above argument, relies solely on district court cases analyzing unjust enrichment claims brought under California law. See, e.g., Pirozzi v. Apple Inc., 913 F. Supp. 2d 840, 852 (N.D. Cal. 2012) (holding, "[t]o state a claim for unjust enrichment," plaintiff must allege "receipt of a benefit and unjust retention of the benefit at the expense of another"). For purposes of the instant motion, the Court assumes, as does Trademarkia, such authority sets forth the requisite showing for all three of Trademarkia's infringement claims.

requirements of Rule 9(b) of the Federal Rules of Civil Procedure, and that such requirements have not been met. See Fed. R. Civ. P. 9(b) (providing plaintiff "alleging fraud" must "state with particularity the circumstances constituting fraud").

In support of its argument, LegalZoom cites paragraphs 112 and 113 of the FAC, in which Trademarkia alleges, respectively, that LegalZoom's act of "register[ing] LegalZoomTrademarkia.com" was "calculated to deceive consumers" (see FAC ¶ 112) and that "LegalZoom intentionally misleads consumers into thinking that they are going to Trademarkia's website when they enter LegalZoomTrademarkia.com" (see FAC ¶ 113).

As Trademarkia points out, however, the above-referenced paragraphs are not asserted in support of the Second Claim for Relief, but, rather, in support of the Third Claim for Relief, a claim alleging cyberpiracy, as to which, as noted, LegalZoom has not sought dismissal for failure to state a claim.

Accordingly, the Second Claim for Relief is not subject to dismissal for failure to comply with Rule 9(b).

**D. Statutory Standing**

Lastly, LegalZoom argues the Second Claim for Relief is subject to dismissal for failure to sufficiently allege "statutory standing." (See Def.'s Mot. at 24:1.)

In Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014), the Supreme Court, noting § 1125(a) creates two "bases of liability," specifically, "false association"[7] and "false advertising," see id. at 122, held, "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales," see id. at 131-132. Assuming, arguendo, such requirement applies equally in a § 1125(a) suit alleging, as here, false association, see, e.g., Ahmed v. Hosting.com, 28 F. Supp. 3d 82, 90 (D. Mass. 2014) ("assum[ing] without deciding that Lexmark applies in false association claims"), the Court finds such

---

[7] A claim "alleg[ing] the misuse of a trademark" is a "type of false association claim." See Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1110 (9th Cir. 1992)

7

requirement has been met.  As noted, Trademarkia and LegalZoom are alleged to be competitors that provide "trademark watch and monitoring services" (see FAC ¶¶ 3-4), and, contrary to LegalZoom's argument, the Court finds, based on the allegations discussed in detail earlier herein, Trademarkia has sufficiently alleged an injury to a commercial interest, namely, an interest in sales of its services.

Accordingly, the Second Claim for Relief is not subject to dismissal for failure to sufficiently allege statutory standing.

**CONCLUSION**

For the reasons stated, LegalZoom's motion to dismiss is hereby DENIED.

**IT IS SO ORDERED.**

Dated:  May 13, 2019

MAXINE M. CHESNEY
United States District Judge